# United States Court of Appeals
## for the Fifth Circuit

### ROLEX WATCH USA, INC.,

*Plaintiff-Appellant/Cross-Appellee,*

*v.*

### BECKERTIME, L.L.C.; MATTHEW BECKER,

*Defendants-Appellees/Cross-Appellants.*

Appeal from the United States District Court for the Northern District of Texas
Case No. 4:20-cv-1060

### BRIEF OF APPELLANT ROLEX WATCH U.S.A., INC.

Brian W. Brokate
Beth Frenchman
Jeffrey E. Dupler
Maja Szumarska
**GIBNEY, ANTHONY & FLAHERTY LLP**
650 Fifth Avenue, 10th Floor
New York, NY 10019
Telephone: (212) 906-3334

Theodore C. Max
Tyler E. Baker
**SHEPPARD MULLIN RICHTER &
HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700

Craig S. Summers – *Lead Counsel*
Matthew S. Bellinger
Brandon G. Smith
**KNOBBE, MARTENS, OLSON & BEAR LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: (949) 760-0404

Daniel Syed
**SHEPPARD MULLIN RICHTER &
HAMPTON LLP**
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
Telephone: (469) 391-7400

*Attorneys for Plaintiff-Appellant/Cross-Appellee,
Rolex Watch U.S.A., Inc.*

# CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

<u>Plaintiff-Appellant</u>

Rolex Watch U.S.A., Inc., a New York corporation

<u>Counsel for Plaintiff-Appellant</u>

Craig Summers
Matthew Bellinger
Brandon Smith
KNOBBE, MARTENS, OLSON & BEAR LLP
2040 Main Street
Irvine, CA 92614
Telephone: (949) 760-0404

Brian Brokate
Beth Frenchman
Jeffrey Dupler
Maja Szumarska
GIBNEY, ANTHONY & FLAHERTY LLP
650 Fifth Avenue
New York, NY 10019
Telephone: (212) 688-5151

Theodore C. Max
Tyler E. Baker
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700

Daniel Syed
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
Telephone: (469) 391-7400

James Sowder
THOMPSON, COE, COUSINS & IRONS LLP
700 North Pearl Street, 25th Floor
Dallas, TX 75201
Telephone: (214) 871-8200

Defendants-Appellees

Matthew Becker
BeckerTime, LLC, a Texas limited liability company

Counsel for Defendants-Appellees

Andy Nikolopoulos
FOX ROTHSCHILD LLP
2501 N. Harwood Street
Suite 1800
Dallas, TX 75201
Telephone: (972) 991-0889

Michael Beylkin
FOX ROTHSCHILD LLP
1225 17th Street
Suite 2200
Denver, CO 80202
Telephone: (303) 292-1200

Date: December 23, 2022       /s/ *Craig S. Summers*

KNOBBE, MARTENS, OLSON & BEAR LLP
Craig S. Summers

*Attorney for Plaintiff-Appellant/Cross-Appellee,
Rolex Watch U.S.A., Inc.*

# STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Rolex Watch U.S.A., Inc. ("Rolex") respectfully requests oral argument. This is an appeal from a bench trial on claims of trademark infringement and counterfeiting brought under the Lanham Act against Defendants-Appellees BeckerTime, LLC and Matthew Becker (collectively "BeckerTime"). The District Court, despite finding BeckerTime liable for trademark infringement and counterfeiting which caused consumer confusion, issued a limited injunction that did not fully enjoin BeckerTime's infringing and counterfeiting activities.

Rolex contends that the injunction departs from established precedent of the Fifth Circuit and other courts specifically directed to Rolex watches. That precedent required the District Court to fully enjoin BeckerTime's advertising and sale of materially altered watches that contain non-genuine integral parts, such as bezels and dials, yet continue to display Rolex's trademarks.

Rolex also contends that the District Court erred by finding that Rolex was not entitled to any monetary relief or attorneys' fees under 15 U.S.C. § 1117. The District Court denied this recovery because it found laches applied, notwithstanding its findings that BeckerTime "intended to benefit from Rolex's reputation and goodwill" in connection with BeckerTime's counterfeiting activities. Rolex maintains that the District Court abused its discretion in finding laches applied because the District Court's findings of fact do not support its laches determination,

and the District Court abused its discretion and committed legal error in refusing to award Rolex monetary relief or attorneys' fees under 15 U.S.C. § 1117(b).

Rolex believes oral argument would be beneficial to address any questions the Court may have regarding the underlying facts and the applicable law, including established Fifth Circuit precedent regarding altered Rolex watches.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ....................................................i

STATEMENT REGARDING ORAL ARGUMENT ....................................... iii

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUES ......................................................................2

STATEMENT OF THE CASE .........................................................................4

I.  Rolex's  Strong And Famous Trademarks Are Featured On Its
Exclusive Rolex Watches..........................................................................4

II.  BeckerTime Deliberately Creates, Markets, And Sells Counterfeit
Altered Watches Displaying Rolex's Trademarks....................................7

III.  The District Court's Injunction Is Not Consistent With Its Findings
Of Trademark Counterfeiting And Consumer Confusion, Nor
Supported By Established Law ................................................................14

    A.  The District Court Entered An Erroneously Narrow Permanent
Injunction That Departs From This Court's Established Precedent ......15

    B.  Departing From Established Precedent, The District Court's
Injunction Failed To Enjoin All Non-Genuine Bezels And Dials .........16

    C.  The District Court Found That BeckerTime Could Assert Laches,
Which Is Wholly Inconsistent With Its Findings That BeckerTime
Deliberately Advertised And Sold Counterfeit Rolex Watches And
Misled Consumers..................................................................................18

SUMMARY OF THE ARGUMENT .................................................................21

ARGUMENT ..................................................................................................26

I.  Standard Of Review ...............................................................................26

II.  Legal Background Regarding Altered Watches......................................26

III.   The District Court Departed From *Meece* And Other Established
       Precedent And Erred In Refusing To Completely Enjoin
       Counterfeit Altered Watches With Non-Genuine Bezels And
       Non-Genuine Dials ................................................................... 30

       A.  The District Court Erred In Failing To Enjoin BeckerTime's
       Sale Of Counterfeit Watches With Non-Genuine Bezels ..................... 30

       B.  The District Court Erred In Failing To Enjoin BeckerTime's
       Sale Of Counterfeit Watches With Non-Genuine Dials ........................ 32

IV.    The District Court Erred In Authorizing BeckerTime To Create And
       Sell Non-Genuine Dials Displaying Rolex's Trademarks ..................... 37

V.     The District Court Erred In Authorizing BeckerTime To Continue
       To Create And Sell Counterfeit Altered Watches With Disclosures ..... 39

VI.    The District Court Erred In Authorizing BeckerTime To Create
       Counterfeit Altered Watches At The Request Of Individual
       Customers ............................................................................ 45

VII.   Given That BeckerTime Committed Deliberate Counterfeitting,
       The District Court Abused Its Discretion In Refusing To Award
       Rolex Any Monetary Relief Or Attorneys' Fees
       Under 15 U.S.C. § 1117(b) ...................................................... 47

       A.  The District Court Abused Its Discretion In Finding
       BeckerTime's Deliberate Counterfeiting Did Not Bar Laches .............. 47

       B.  The District Court Abused Its Discretion In Determining
       That BeckerTime Had Proved Undue Prejudice And
       That Laches Applied ............................................................... 52

       C.  The District Court Erred In Not Awarding Treble Profits And
       Attorneys' Fees Under 15 U.S.C. § 1117(b) ................................. 54

CONCLUSION ................................................................................ 58

CERTIFICATE OF SERVICE ............................................................. 60

CERTIFICATE OF COMPLIANCE ..................................................... 61

# TABLE OF AUTHORITIES

**Cases**

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
    518 F.3d 321 (5th Cir. 2008) ........................................................26

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
    457 F.3d 1062 (9th Cir. 2006) .....................................................42

*Audi AG v. D'Amato*,
    381 F. Supp. 2d 644 (E.D. Mich. 2005) ......................................40

*Australian Gold, Inc. v. Hatfield*,
    436 F.3d 1228 (10th Cir. 2006) ...................................................41

*Bd. of Supervisors for La. State Univ. Agric. and Mech. Coll.*
    *v. Smack Apparel Co.*,
    550 F.3d 465 (5th Cir. 2008) .......................................24, 49, 52

*Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*,
    510 F.2d 1004 (5th Cir. 1975) .....................................................40

*Bulova Watch Co. v. Allerton Co.*,
    328 F.2d 20 (7th Cir. 1964) ...............................................*passim*

*Chanel, Inc. v. Maslar*,
    No. 4:07-cv-01033, 2009 WL 10711657
    (S.D. Tex. Nov. 19, 2009) ............................................................40

*Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*,
    659 F.2d 695 (5th Cir. 1981) .................................................23, 46

*City of New York v. Blue Rage, Inc.*,
    435 F. Supp. 3d 472 (E.D.N.Y. 2020) .........................................40

*Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*,
    304 F.3d 1167 (11th Cir. 2002) ...................................................47

*Dunkin' Donuts Inc. v. Mercantile Ventures*,
    1994 WL 93257 (5th Cir. 1994) (unpublished)............................55

*Eskay Drugs, Inc. v. Smith, Kline & French Labs.*,
 188 F.2d 430 (5th Cir. 1951) ........................................................................46

*Family Rehab., Inc. v. Becerra*,
 16 F.4th 1202 (5th Cir. 2021) .....................................................................26

*Hamilton Int'l Inc. v. Vortic LLC*,
 13 F.4th 264 (2d Cir. 2021) .........................................................................44

*Hill v. Washburne*,
 953 F.3d 296 (5th Cir. 2020) .......................................................................26

*Home Box Off., Inc. v. Showtime/The Movie Channel Inc.*,
 832 F.2d 1311 (2d Cir. 1987) ......................................................................41

*Louis Vuitton S.A. v. Lee*,
 875 F.2d 584 (7th Cir. 1989) ........................................................52, 54, 55

*Pennzoil-Quaker State Co. v. Miller Oil and Gas Operations*,
 779 F.3d 290 (5th Cir. 2015) .......................................................................52

*Quick Techs., Inc. v. Sage Grp. PLC*,
 313 F.3d 338 (5th Cir. 2002) .......................................................................26

*Rolex Watch U.S.A., Inc. v. Canner*,
 645 F. Supp. 484 (S.D. Fla. 1986) .......................................................15, 46

*Rolex Watch U.S.A., Inc. v. JBJ Distribs., Inc.*,
 No. H-99-1621, 2001 U.S. Dist. Lexis 27509
 (S.D. Tex. Aug. 20, 2001) ...................................................................*passim*

*Rolex Watch U.S.A., Inc. v. Meece*,
 158 F.3d 816 (5th Cir. 1998) ...............................................................*passim*

*Rolex Watch U.S.A., Inc. v. Meece*,
 No. 95-cv-1058, 2000 WL 33582648
 (N.D. Tex. Jan. 25, 2000) ....................................................................*passim*

*Rolex Watch U.S.A., Inc. v. Michel Co.*,
 179 F.3d 704 (9th Cir. 1999) ...............................................................*passim*

*Rolex Watch U.S.A., Inc. v. Watch Empire LLC*,
 No. 13-009221, 2015 U.S. Dist. Lexis 131668
 (C.D. Cal. Sept. 29, 2015) ...............................................................28

*Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc.*,
 No. CV 02-1089, 2002 WL 35656950 (C.D. Cal. Nov. 8, 2002) ................28

*RXD Media, LLC v. IP Application Dev. LLC*,
 986 F.3d 361 (4th Cir. 2021) .........................................................47

*State of La. v. Biden*,
 45 F.4th 841 (5th Cir. 2022) .........................................................37

*Sunbeam Prods., Inc. v. W. Bend Co.*,
 123 F.3d 246 (5th Cir. 1997) .....................................................23, 46

*Vans, Inc. v. MSCHF Prod. Studio Inc.*,
 22-CV-2156 (WFK) (RML), 2022 WL 1446681
 (E.D.N.Y. Apr. 29, 2022) ..............................................................44

*Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc.*,
 106 F.3d 894 (9th Cir. 1997) .........................................................34

**Statutes**

15 U.S.C. § 1114 ...............................................................................1

15 U.S.C. § 1117 ......................................................................*passim*

15 U.S.C. § 1121 ...............................................................................1

15 U.S.C. § 1125 ...............................................................................1

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1331 ...............................................................................1

28 U.S.C. § 1338 ...............................................................................1

**Rules**

Fed. R. Civ. P. 65(d) .........................................................................38

**Other Authorities**

McCarthy on Trademarks and Unfair Competition
    (5th ed. 2021)............................................................................52, 55

Senate-House Joint Explanatory Statement on
    Trademark Counterfeiting Legislation,
    130 Cong. Rec. H12076 (Oct. 10, 1984)................................................52, 56

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Rolex Watch U.S.A., Inc. ("Rolex") brought claims against Defendants-Appellees BeckerTime, LLC and Matthew Becker (collectively "BeckerTime") for trademark infringement and counterfeiting under 15 U.S.C. § 1114 and for false designation of origin, false descriptions and representations, and unfair competition under 15 U.S.C. § 1125 based upon BeckerTime's advertisement and sale of materially altered watches displaying Rolex's trademarks. ROA.22–127. The District Court had jurisdiction over Rolex's claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b).

This appeal is from a final judgment, entered on August 12, 2022, that disposed of all claims. ROA.2274–2280. Rolex timely filed a notice of appeal on September 8, 2022. ROA.2424–2426. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Did the District Court err by not following established precedent and not fully enjoining BeckerTime's infringing and counterfeiting activities with respect to:

   a. counterfeit Rolex-branded watches bearing non-genuine integral parts, namely bezels and dials, in Sections 1(a) and 1(b) of the injunction;

   b. counterfeit and non-genuine Rolex-branded parts in Section 1(c) of the injunction, including creating, advertising, or selling altered dials displaying Rolex's trademarks;

   c. authorizing BeckerTime to engage in counterfeiting, including creating, advertising, or selling counterfeit Rolex-branded watches displaying Rolex's trademarks, provided that BeckerTime makes "full disclosures";

   d. authorizing BeckerTime to advertise, create, and sell counterfeit Rolex-branded watches if the counterfeiting is requested by an individual customer?

2. Given that BeckerTime deliberately committed trademark counterfeiting, intended to benefit from Rolex's reputation and goodwill, and misled and deceived consumers, did the District Court err by: (a) concluding that there was "insufficient evidence to show it had unclean hands" and laches barred Rolex from recovering BeckerTime's disgorgement of profits and (b) by failing to award treble

profits and attorneys' fees to Rolex pursuant to 15 U.S.C. § 1117(b), which are mandatory absent extenuating circumstances, of which there were none?

## STATEMENT OF THE CASE

The District Court conducted a two-day bench trial on October 25–26, 2021, and issued a Memorandum Opinion & Order setting forth its post-trial findings of fact on January 31, 2022.[1] ROA.2157–2172. On August 12, 2022, the District Court entered a Final Judgment setting forth the scope of the injunctive relief now at issue. ROA.2274–2280.

## I. ROLEX'S STRONG AND FAMOUS TRADEMARKS ARE FEATURED ON ITS EXCLUSIVE ROLEX WATCHES

The District Court found that Rolex is the exclusive and official distributor and warrantor of Rolex watches, and is responsible for promoting, marketing, servicing, and selling Rolex watches in the U.S. ROA.2161; ROA.2498–2499, ROA.2516.

Rolex is the owner of numerous incontestable trademark registrations for trademarks such as the famous ROLEX and ♔ (Crown Design) trademarks.[2] ROA.2158; ROA.1974–1975; ROA.18463–18479; ROA.2505–2510. As the District Court recognized, the Rolex trademarks are arbitrary, fanciful, and strong (ROA.2158, ROA.2161), and in the past five years alone, Rolex has spent hundreds

---

[1] The District Court made numerous post-trial findings cited by Rolex in support of its Statement of the Case. These findings are indicated by citations to ROA.2157–2172.

[2] Before trial, the parties stipulated to numerous facts cited by Rolex in support of its Statement of the Case. These stipulated facts are indicated by citations to ROA.1974–1981.

of millions of dollars advertising its trademarks and watches, which has made Rolex one of the most popular and recognized watch brands in the world. ROA.2161; ROA.2522, ROA.2534.

Rolex watches include the following main components: the watch movement, the watch case, the dial, the transparent crystal that covers the dial, the hands, the bezel, and the bracelet:



ROA.1978–1979; *see also* ROA.2158; ROA.2500–2502; ROA.2674–2675.

The watch movement is a mechanical time-keeping mechanism located inside the watch case and protected by a water-resistant seal created by the watch case, crystal, bezel, and other components. ROA.1978; ROA.2500–2503.

The dial is the "face" of the watch and is equipped with hands and hour markers that permit the wearer to tell time.  ROA.1978; ROA.2677–2678.  All genuine Rolex dials bear the ROLEX and Crown Design trademarks and, depending on the watch model, bear other Rolex trademarks.  ROA.1978; ROA.2501–2502. The hour markers, and if present diamonds or other stones, must be carefully set into the dial to ensure the watch performs correctly.  ROA.2678–2680.

The bezel is a ring of steel, gold, or platinum that surrounds the crystal and ensures that dust, water, and other elements will not penetrate the watch case. ROA.1978; ROA.2674–2676.  The bezel is critical to creating the seal that protects the movement inside the watch case.  ROA.2676.  If the dimensions or shape of the bezel are not perfect, the watch may lose water resistance and be damaged when exposed to water.  ROA.2676–2677.

The bracelet is attached to the watch case and opens and closes by means of a clasp.  ROA.1978; ROA.2501.  A Rolex clasp also bears the ROLEX and Crown Design trademarks.  ROA.1978; ROA.2506–2507.

In examining Rolex's warranty and repair policies, the District Court found:

Each new Rolex watch is covered by a 5-year manufacturer's warranty. Rolex services its watches through service centers in New York, Dallas, Los Angeles, and Lititz, PA. Additionally, qualified Official Rolex Jewelers ('ORJs') operate service centers throughout the United States. Rolex watches serviced by Rolex or its ORJs come with a two-year service warranty. Rolex sells genuine watch components to ORJs, allowing them to service the watches. Rolex additionally sells genuine Rolex parts to non-ORJ jewelers. Once a watch has been altered with

parts that are not genuinely Rolex, Rolex will not guarantee the quality, performance, or function of the watch.

ROA.2158; ROA.1977, ROA.1979.

Replacing certain genuine Rolex parts with non-genuine parts can affect the performance of the watch, including its water-resistance and ability to keep accurate time. ROA.2676–2680; ROA.2700; ROA.2711–2712. As the District Court found, once a Rolex watch has been altered with non-genuine parts, Rolex's warranty is void because Rolex cannot guarantee the quality, performance, or function of the altered watch. ROA.2158–2159.

The District Court further found that there is a strong secondary market for pre-owned Rolex watches due in part to the high quality and longevity of the watches, and that Rolex watches that are properly cared for and serviced can last for decades. ROA.2159. Consequently, Rolex watches are often resold or passed along to others. ROA.2538–2539; ROA.17909–17910; ROA.2159.

## II.  BECKERTIME DELIBERATELY CREATES, MARKETS, AND SELLS COUNTERFEIT ALTERED WATCHES DISPLAYING ROLEX'S TRADEMARKS

BeckerTime owns and operates websites through which it advertises and sells used Rolex-branded watches altered with non-genuine parts; BeckerTime does not operate any brick and mortar store. ROA.2159; ROA.1975. The watches at issue in this case are watches that display Rolex's trademarks and contain aftermarket bezels, refinished dials, and aftermarket bracelets/bands to which genuine Rolex

clasps/buckles displaying Rolex's trademarks are added (collectively, "Altered Watches"). ROA.1977.

Nearly all of BeckerTime's business consists of selling used, Rolex-branded watches, some of which are genuine, used Rolex watches, not at issue here. ROA.2782; ROA.13830–13831; ROA.3176. Approximately 61% of that business consists of selling Altered Watches. ROA.1976–1977; ROA.2765–2766.

BeckerTime creates most of its Altered Watches by first purchasing used Rolex watches or separate watch parts, such as watch heads (consisting of the watch case, dial, and watch movement), refinished dials, aftermarket bezels, and aftermarket bracelets or bracelet links. ROA.17600, ROA.17623–17624, ROA.17629–17631; ROA.17930–17932; ROA.17946; ROA.17948; ROA.17953; ROA.17988. BeckerTime then modifies those watches and/or uses the purchased watch parts to create or assemble a variety of models of Altered Watches. ROA.17623–17624; ROA.2942–2943. The vast majority (approximately 90%) of BeckerTime's Altered Watches are not in BeckerTime's inventory but are created and assembled after an order is placed. ROA.3048; ROA.17755–17756.

Rolex purchased two watches from BeckerTime prior to filing this lawsuit. ROA.2159; *see also* ROA.13794; ROA.15966–15967; ROA.15972–15973; ROA.16031–16032. Both watches included refinished dials which were created by stripping the dial down to bare metal, and once the refinishing process was complete,

reapplying Rolex's trademarks to the dial. ROA.2159. BeckerTime added diamonds as hour markers to the refinished dials on both watches by drilling holes in the dials and then placing aftermarket diamonds and settings into the holes. ROA.2159. Both watches also had aftermarket bezels. ROA.1975; ROA.2699–2700; ROA.15967–15968; ROA.2711–2712; ROA.15972–15973. The bezel on one watch was the incorrect size, which caused the watch to no longer be "pressure proof" (i.e., water-resistant). ROA.2711–2712. The District Court found that "[t]he quality of the majority of BeckerTime's non-genuine Rolex replacement parts are inferior to genuine Rolex parts," (ROA.2160), and the quality of the two watches purchased by Rolex, including the quality of the refinished dials and the aftermarket bezels, was inferior as compared to a Rolex watch with genuine components of a similar age. ROA.2697; ROA.2699–2700; ROA.2703–2704; ROA.2710–2712.

Nearly all of BeckerTime's Altered Watches include refinished dials. ROA.1976–1977. As was the case with the two counterfeit Altered Watches purchased by Rolex, inexpensive aftermarket diamonds or other stones are added to many of BeckerTime's refinished dials. ROA.17629–17630; ROA.17687; ROA.2159–2160. For example, BeckerTime purchases refinished dials to which 11 aftermarket diamonds have been added for less than $200. ROA.17933–17934. The diamonds are of lower quality than diamonds used on genuine Rolex dials. ROA.2697; ROA.2710. BeckerTime has experienced quality issues with its

refinished dials, such as paint chipping or peeling, or diamonds or stones coming loose. ROA.17913–17914. BeckerTime has also received numerous complaints from customers regarding the substandard quality of its Altered Watches. ROA.2162; *see also* ROA.18532–18533; ROA.18534–18535; ROA.18536–18538; ROA.19003–19004; ROA.19027–19039; ROA.19049–19073; ROA.19077–19078; ROA.19112–19116; ROA.16069–16070; ROA.17726–17728.

BeckerTime also adds diamonds to some of the aftermarket bezels it uses on its Altered Watches. ROA.2160. BeckerTime sometimes also uses aftermarket bands or straps on its Altered Watches to which BeckerTime adds genuine Rolex clasps or buckles displaying Rolex's trademarks. ROA.2160.

In describing BeckerTime's process of creating dials, and the two watches purchased by Rolex, the District Court found:

> **In the process of refurbishing dials, BeckerTime strips the dial down to bare metal, then, after the refurbishing process is complete, reapplies Rolex's trademarks.** Rolex does not perform or authorize these modifications. . . . Rolex has never sold a watch matching the description of Watch One. . . . Rolex never sold a watch that matches Watch Two's description.

ROA.2159–2160 (emphasis added). The District Court further concluded that BeckerTime's deliberate use of the Rolex trademarks was not authorized:

> The at-issue watches sold by BeckerTime contain at least one Rolex trademark. BeckerTime applied aftermarket bezels (not made or endorsed by Rolex) to some of the at-issue watches, including bezels with added diamonds. BeckerTime sometimes applies aftermarket bands or straps (not made or endorsed by Rolex) on the at-issue watches

that sometimes include a genuine Rolex clasp or buckle displaying Rolex's trademarks. BeckerTime provides an "Authenticity Guarantee" for each at issue watches it sells. BeckerTime has held itself out as a "Certified Pre-Owned Watch Dealer"' with a "Rolex Certified Master Watchmaker." But Rolex has never certified or endorsed any watchmakers. Rolex has never certified BeckerTime, its watchmaker, or any of the watches that BeckerTime sells.

ROA.2160.

The District Court also found that parts replaced by BeckerTime on its Altered Watches, namely dials, bezels, and bracelets, are integral and necessary components of the watches. ROA.2157. The parts BeckerTime adds to its Altered Watches do not bear any markings indicating BeckerTime is the source. ROA.2160.

As a result, the District Court concluded that: "The goods sold by BeckerTime are materially different than the original Rolex watches." ROA.2164.[3] In addition, the District Court found: "BeckerTime is not using the Rolex Trademarks to identify Rolex's products. Instead, . . . BeckerTime uses the Rolex Trademarks to identify its own altered watches." ROA.2163. The District Court also noted that BeckerTime deliberately mislabeled its counterfeit Altered Watches:

> For example, BeckerTime sometimes prints the phrase "Superlative Chronometer Officially Certified" on a refurbished watch. Rolex uses that phrase to signify the watch movement met certain time accuracy standards when manufactured. Beckertime does not investigate whether

---

[3] It is undisputed that BeckerTime's accused Rolex watches include one or more of the following alterations: (1) "refinished" watch dials; (2) "aftermarket" bezels that were not manufactured by Rolex; and (3) "aftermarket" bracelets or straps that are not manufactured by Rolex to which genuine, used Rolex clasps or buckles bearing one or more of the Rolex Trademarks are added. ROA.1977.

its watches meet those accuracy standards. The result is that BeckerTime mislabels watches to appear more valuable than they are. For instance on one occasion BeckerTime mislabeled a Rolex DATE watch as a Rolex DATEJUST watch. This shows their "authenticity certified statement" is not fully accurate, because they fail to verify the correct model of the watch.

ROA.2160.

BeckerTime also made false and misleading statements in marketing its Altered Watches. For example, BeckerTime prominently advertised the watches as "**GENUINE ROLEX**" even though they contain non-Rolex parts. ROA.2159; ROA.3065–3066; ROA.3072–3073; ROA.3086; ROA.3088; ROA.3090; ROA.13815–13829; ROA.16047–16064; ROA.16460–16517. BeckerTime included statements comparing the prices of its Altered Watches to the "New MSRP (if all factory)" of a Rolex watch, even though Rolex never sold watches matching the description of BeckerTime's Altered Watches. ROA.2159–2160; ROA.16047–16064; ROA.2689–2691; ROA.13815–13829; ROA.2706–2707; ROA.2726.

BeckerTime provides purchasers of its Altered Watches with a "Certificate of Authenticity," representing that the watch "was thoroughly examined by a recognized Rolex expert and has been deemed to be genuine…." ROA.3448–3455; ROA.3138–3139. However, the certificates are signed by Matthew Becker, whose scribbled signature is unrecognizable. ROA.3448–3455; ROA.3144. BeckerTime's authenticity statement is also not fully accurate because BeckerTime failed to verify the correct model of the watches. ROA.2160.

Based upon these factual findings, the District Court concluded in its "Facts Relating to Digits of Confusion" that BeckerTime's use of "'Rolex certified watchmaker' is confusing and suggests an affiliation or sponsorship." ROA.2161; *see also* ROA.1980 (Stipulated Fact No. 65 – "Rolex has never certified in any way either BeckerTime, its watchmaker, or any of the watches that BeckerTime sells."). The District Court further held that BeckerTime's disclosures, rather than eliminating confusion, were misleading:

> The product descriptions on BeckerTime's website and eBay listings indicate that the replacement parts are not genuine Rolex parts, that BeckerTime is not affiliated with Rolex, and that the alterations will void the Rolex warranty. Most customers, at a minimum, read the product descriptions. The words "GENUINE ROLEX" are more prominent than any disclosures. BeckerTime's customers are not as sophisticated as Rolex customers, but are not unsophisticated. When asked by customers, BeckerTime provides further product descriptions and reiterates that Rolex will no longer service the watches in question. Subsequent potential purchasers of BeckerTime's watches may not have the benefit viewing BeckerTime's product listings and disclaimers. BeckerTime's Altered Watches are typically sold for less than Rolex's new watches, which puts purchasers on notice that they may not be fully Rolex watches. The disclosures fail to state that the watches are labeled as different models than the actual Rolex model the watch is. Further, the disclosures mislead purchasers into thinking there is a comparable genuine Rolex, when in fact, there is not always one.

ROA.2162.

Notwithstanding those disclosures, the District Court found that BeckerTime's customers were actually confused regarding the authenticity of BeckerTime's Altered Watches:

Other customers have inquired as to the authenticity, asking for further specifications and stating they are confused as to whether the watch is fully genuine Rolex. This shows BeckerTime's disclosures did not fully alleviate confusion. Similarly, BeckerTime has received complaints about the quality of the watches and complaints that the watch was not actually composed of exclusively genuine Rolex parts. This shows some actual confusion.

ROA.2161–2162.[4]

## III. THE DISTRICT COURT'S INJUNCTION IS NOT CONSISTENT WITH ITS FINDINGS OF TRADEMARK COUNTERFEITING AND CONSUMER CONFUSION, NOR SUPPORTED BY ESTABLISHED LAW

As evidenced by the numerous citations to the District Court's findings in this Statement of the Case, the District Court found in favor of Rolex on nearly every issue, including, most significantly, that BeckerTime committed trademark infringement and counterfeiting. ROA.2168–2169. The District Court found that BeckerTime's use of Rolex's trademarks on watches altered with non-genuine parts was trademark counterfeiting because, *inter alia*, "BeckerTime modified DATE watches to resemble more expensive DATEJUST watches," "BeckerTime refinished and placed diamonds in the genuine Rolex dials," "Rolex did not perform or authorize the modifications, and its warranty was voided by BeckerTime's

---

[4] *See also* ROA.18993–19000; ROA.19007–19008; ROA.19040–19048; ROA.19074–19076; ROA.19079–19089; ROA.19092–19094; ROA.19098–19104; ROA.16088–16095; ROA.16096–16104; ROA.16108–16119; ROA.16123–16124; ROA.16111–16113; ROA.17726–17728; ROA.18532–18538; ROA.18993–188995; ROA.19001–19006; ROA.19009–19010; ROA.19015–19026; ROA.19077–19078; ROA.19090–19091; ROA.19095–19097; ROA.19110–19111; ROA.16105–16107; ROA.18436–18438; ROA.17726–17728.

activities," and "BeckerTime, not Rolex, stood behind the watches, but the trademark suggested otherwise." ROA.2168. The District Court further found that "… BeckerTime's placement of original Rolex clasps on non-genuine bracelets increased the likelihood of confusion as to the genuineness of the watch, and this activity constituted counterfeiting under statute." ROA.2169. Further, the District Court concluded that post-sale confusion is likely because "[a]lthough BeckerTime argues that most watches were sold in response to customer requests, '[o]nce a product is injected into commerce, there is no bar to confusion, mistake, or deception occurring at some future point in time.'" ROA.2168–2169 (quoting *Rolex Watch U.S.A., Inc. v. Canner*, 645 F. Supp. 484, 493 (S.D. Fla. 1986)). The District Court's injunction is inconsistent with its liability and infringement findings, and departs from Fifth Circuit and other precedent.

## A. **The District Court Entered An Erroneously Narrow Permanent Injunction That Departs From This Court's Established Precedent**

The District Court ordered that BeckerTime be "enjoined from selling any watches which infringe on Rolex's trademarks" and directed the parties to submit briefing on proposed injunction language, which the parties then did. ROA.2172; ROA.2173–2198; ROA.2247–2268.

The injunction entered by the District Court was overly-narrow and deviated from the language proposed by Rolex in several respects. For example, the District Court refused to enjoin Altered Watches containing non-genuine bezels.

ROA.2274–2277.  The District Court also refused to enjoin all non-genuine dials, instead enjoining only altered dials from which Rolex's trademarks are removed and reapplied.  ROA.2274–2277.  Altered dials that retain *original* Rolex trademarks were not enjoined.  ROA.2274–2277.

The District Court's injunction is perplexing because application of this Court's case law, and that of other courts, to the District Court's own findings mandate issuance of an injunction having the full scope sought by Rolex.  The injunction also deviated from established case law by affirmatively permitting and authorizing BeckerTime to continue to advertise, create, and sell counterfeit watches subject to certain limitations.  ROA.2276–2277.  Certain portions of the injunction are also missing words and unclear, and thus require clarification.

## B. Departing From Established Precedent, The District Court's Injunction Failed To Enjoin All Non-Genuine Bezels And Dials

Sections 1(a) and 1(b) of the injunction did not enjoin BeckerTime from using non-genuine bezels on Rolex-branded watches and only enjoined certain types of non-genuine dials.  ROA.2274–2277.  The District Court explained its departure from binding Fifth Circuit precedent as follows:

> While to [sic] Court has declined to include bezels in 1.a and 1.b, the Court finds advertisements labeling watches with a non-genuine bezel as a Rolex is [sic] likely to confuse customers. ***Bezels have repeatedly been found to be an integral part of a watch, thus labeling an entire watch as a Rolex when this integral part is non-genuine produces too high a risk of confusion to be permissible.*** *See Rolex Watch U.S.A., Inc. v. Meece*, 158 F.3d 816, 825 (5th Cir. 1998) ("[T]he bezel on a

Rolex watch is a necessary and integral part of the watch and serves a water-proofing function."); *Rolex Watch U.S.A., Inc. v. JBJ Distribs., Inc.*, No. H-99-1621, 2001 U.S. Dist. Lexis 27509, at *9 (S.D. Tex. Aug. 20, 2001), *aff'd* 77 F. Appx. 208 (5th Cir. 2003). The Court finds this is distinguishable from dials with added diamonds or other customizations because customers with no prior knowledge about watches can distinguish original from custom dials, but likely cannot distinguish between genuine and non-genuine bezels.

ROA.2277 (emphasis added). With regard to non-genuine watch dials, the District Court issued a limited injunction that enjoined only "dials where the dial is stripped of the original paint/coating and markings, then repainted/recoated, and to which the Rolex Trademarks have been reprinted or reapplied, or to which other words have been added." ROA.2275–2276. The District Court expressly excluded customized dials that do not involve the removal or reapplication of Rolex's trademarks, and which may or may not have added diamonds, stones, or other embellishments. ROA.2275–2276.

Section 1(c) of the injunction enjoined BeckerTime from using any of Rolex's trademarks in connection with certain non-genuine parts, including certain "non-genuine dials, including, but not limited to, refinished dials where the [sic] (including a once genuine Rolex dial is stripped of the original paint/coating and markings, then repainted/recoated, and to which the Rolex Trademarks have been reprinted or reapplied, or to which other [sic] have been added."[5] ROA.2277.

---

[5] The injunction language proposed by Rolex stated: "non-genuine dials, including, but not limited to, refinished dials (including a once genuine Rolex dial stripped of the original

-17-

In Section 1(a) of the injunction, the District Court sanctioned BeckerTime's continued advertising and sale of counterfeit watches so long as BeckerTime makes "full disclosures" and inscribes "CUSTOMIZED BY BECKERTIME" on the back of the watches. ROA.2275. In Section 1(b), the District Court permitted BeckerTime to perform modifications to watches which would be considered counterfeit so long as, *inter alia*, it inscribes "CUSTOMIZED BY BECKERTIME" on the back of the watches. ROA.2277. In Section 1(b) of the injunction, the district court also affirmatively authorized BeckerTime to advertise and make modifications to watches which would be considered counterfeit at the request of individual customers. ROA.2276–2277.

**C.**   **The District Court Found That BeckerTime Could Assert Laches, Which Is Wholly Inconsistent With Its Findings That BeckerTime Deliberately Advertised And Sold Counterfeit Rolex Watches And Misled Consumers**

In finding BeckerTime liable for trademark infringement and counterfeiting, the District Court found that BeckerTime "intended to benefit from Rolex's reputation and goodwill" in selling counterfeit Altered Watches. ROA.2161, ROA.2170. Despite that finding, and its other findings in support of its conclusion that BeckerTime's activities were misleading, caused consumer confusion, and constituted counterfeiting, the District Court held that: "It is inherent in the resale of

---

paint/coating and markings, then repainted/recoated, and to which the Rolex Trademarks have been reprinted or reapplied, or to which other words or embellishments (including diamonds, stones, etc.) have been added)." ROA.2180.

luxury goods that sellers wish to benefit from the reputation and goodwill of the brand name. This is not sufficient to show unclean hands necessary to prevent a party from benefiting from laches." ROA.2170. The District Court noted further that "Rolex failed to show subjective and knowing bad faith necessary to foreclose equitable defenses." ROA.2170. The District Court held that laches prevented Rolex from disgorging BeckerTime's profits. ROA.2170.

Rolex also had requested that BeckerTime's disgorged profits be trebled by the District Court and that Rolex recover its attorneys' fees under 15 U.S.C. § 1117. ROA.33, ROA.36; ROA.1985. The District Court made no express finding that any "extenuating circumstances" existed that should preclude Rolex from recovering treble profits under 15 U.S.C. § 1117(b). ROA.2157–2172; ROA.2274–2280. The District Court did not address Rolex's request for attorneys' fees. ROA.2157–2172; ROA.2274–2280.

The District Court rejected BeckerTime's remaining affirmative defenses. With respect to BeckerTime's fair use defense, the District Court found: "BeckerTime is not using Rolex marks to truthfully identify a Rolex watch, but instead their own, modified watch. Therefore, BeckerTime is not protected by fair use." ROA.2171. The District Court also rejected BeckerTime's first sale doctrine defense, noting: "The watches sold by BeckerTime are materially different than

those sold by Rolex.  Therefore, BeckerTime is not entitled to protection under the

first-sale doctrine."  ROA.2171.

## SUMMARY OF THE ARGUMENT

Rolex watches are some of the most famous and sought-after watches in the world. This fame and demand have brought about many infringers and counterfeiters who seek to illicitly profit from, and in the process tarnish, the reputation of the Rolex brand. To combat these unlawful activities, Rolex has brought numerous successful lawsuits over the years.

This Court, and many other prior federal court decisions, have held that bezels, dials, and bracelets are integral parts of a Rolex watch and essential to its use; that the replacement of these parts with non-genuine parts (i.e. parts not make by Rolex) results in a new product such that continued use of the Rolex trademarks on the Altered Watches is deceptive, and that the marketing and sale of such watches constitutes trademark infringement and counterfeiting. *See, e.g., Rolex Watch U.S.A., Inc. v. Meece*, No. 95-cv-1058, 2000 WL 33582648, at *2 (N.D. Tex. Jan. 25, 2000), on remand from *Rolex Watch U.S.A., Inc. v. Meece*, 158 F.3d 816 (5th Cir. 1998), *cert. denied* 526 U.S. 1133 (1999). As explained below, while the District Court correctly cited this Court's controlling precedent in *Meece*, it erred in entering an injunction that did not comport with *Meece* and other established case law developed over the past two decades specifically directed to Rolex watches.

Although the District Court correctly acknowledged that the parts replaced by BeckerTime – including bezels and dials – are integral and necessary to the watches,

it erroneously refused to enjoin counterfeit Altered Watches containing non-genuine bezels. ROA.2274–2277. The District Court also erred in refusing to enjoin all non-genuine dials. The District Court incorrectly drew a distinction between altered dials from which Rolex's trademarks are removed and reapplied, which were enjoined, and altered dials from which Rolex's trademarks are not removed and reapplied but that contain aftermarket diamonds or other stones set by drilling holes into the dials, which were not enjoined. ROA.2274–2277.

The District Court also erred in allowing BeckerTime to create, advertise, and sell certain Altered Watches so long as BeckerTime provides unspecified "full disclosures." ROA.2274–2277. The purported "full disclosures" relied upon by BeckerTime at trial were found by the District Court to be misleading and to cause confusion among BeckerTime's customers as to authenticity of the Altered Watches. ROA.2161–2162. BeckerTime presented no evidence at trial that additional "full disclosures" would prevent confusion, and there was no factual support for the District Court's inclusion of this language. Moreover, courts have repeatedly found that disclosures in connection with altered watches cannot effectively prevent confusion, including post-sale confusion. *See Bulova Watch Co. v. Allerton Co.*, 328 F.2d 20, 24 (7th Cir. 1964); *Rolex Watch U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 710 (9th Cir. 1999).

The District Court also erred in including an exception in its injunction affirmatively authorizing BeckerTime to create counterfeit watches at the request of an individual watch owner. ROA.2276–2277. BeckerTime is not in the business of altering watches owned by individual consumers. ROA.3046. Moreover, as an adjudicated counterfeiter, BeckerTime is legally required to stay a safe distance away from further infringing Rolex's trademarks. *See Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*, 659 F.2d 695, 705 (5th Cir. 1981); *Sunbeam Prods., Inc. v. W. Bend Co.*, 123 F.3d 246, 260 (5th Cir. 1997) (*abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23 (2001)). Contrary to this law and the District Court's finding that Altered Watches once entered into commerce are likely to create post-sale confusion at some future point in time (ROA.2162), the District Court did the opposite and, indeed, authorized BeckerTime to advertise and enter the business of counterfeiting on demand.

The District Court also erred in finding laches and in refusing to award Rolex any monetary relief or attorneys' fees. The District Court's findings, along with other record evidence, demonstrated that BeckerTime knowingly used counterfeit copies of Rolex's trademarks with the wrongful intent to capitalize on the goodwill associated with those marks. The District Court clearly erred in then concluding that BeckerTime did not intentionally infringe Rolex's trademarks with a bad faith intent to capitalize on Rolex's goodwill, and abused its discretion in finding that

BeckerTime did not have unclean hands barring laches. *See Bd. of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008) ("A defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense.").

Moreover, BeckerTime was required to prove as part of its laches defense that it was unduly prejudiced by Rolex's alleged delay in filing this lawsuit. *See id.* at 489–90. There was no evidence establishing that BeckerTime suffered undue prejudice as a result of Rolex's alleged delay, and the District Court clearly erred in finding undue prejudice existed.

Finally, the District Court abused its discretion in not awarding Rolex attorneys' fees and three times BeckerTime's profits under 15 U.S.C. § 1117(b). The District Court made no finding of any "extenuating circumstances" that would justify denying this relief. Regardless, this Court need not even address the defense of "extenuating circumstances" to treble-profit liability under Section 1117(b), because as an affirmative defense it must have been pleaded or otherwise presented to the District Court. It was not and is therefore waived. It is inapplicable, in any event, because it is intended only for extreme cases. The District Court's finding of laches is not one of the "extenuating circumstances" contemplated by Section 1117(b).

Rolex requests that this Court remand to the District Court with instructions to enter an injunction that comports with the law of this Circuit and the decisions of other courts regarding Rolex watches. Rolex also requests that this Court reverse the District Court's finding of laches and remand to the District Court with instructions to determine the amount of BeckerTime's profits that should be disgorged, treble the amount of those profits, and determine the amount of attorneys' fees that should be awarded to Rolex.

## ARGUMENT

## I.   STANDARD OF REVIEW

"The district court's findings of fact and all its determinations regarding the equitable injunction factors are reviewed for clear error." *Hill v. Washburne*, 953 F.3d 296, 303–304 (5th Cir. 2020).   However, "any issue of law underlying that decision is reviewed de novo." *Family Rehab., Inc. v. Becerra*, 16 F.4th 1202, 1204 (5th Cir. 2021).   The District Court's finding of laches is reviewed for abuse of discretion. *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 334 (5th Cir. 2008).   The District Court's ruling regarding remedies under 15 U.S.C. § 1117 is reviewed for abuse of discretion. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 347 (5th Cir. 2002).

## II.   LEGAL BACKGROUND REGARDING ALTERED WATCHES

In *Meece*, decided by this Court, the defendant sold: (i) "enhanced new watches" consisting of new Rolex watches that Meece "enhanced" by substituting non-genuine parts, such as diamond bezels and bracelets, and by adding diamonds to original Rolex dials bearing the original Rolex trademarks, and (ii) "converted used watches" which Meece "converted" by re-casing genuine used Rolex movements in non-genuine Rolex cases and substituting other non-genuine parts. *Meece*, 158 F.3d at 820–22.   The district court, following a bench trial, found that

Rolex had established a substantial likelihood of confusion and entered an injunction prohibiting Meece's sale of "reconstructed" Rolex-branded watches. *Id.* at 821–22.

One of the issues the parties disputed on appeal was whether the injunction prohibiting the sale of "reconstructed" watches applied to Meece's "enhanced new watches." This Court found that it did. *Id.* at 825. The Court, relying in part on the Seventh Circuit's decision in *Bulova* (328 F.2d 20), explained that this interpretation of the injunction was "supported by case law interpreting the Lanham Act as prohibiting a party from making changes in integral parts of a product and then selling the modified product under the original trademark without full disclosure."[6] *Id.* The Court also determined that parts such as bezels, dials, and bracelets were necessary and integral parts of Rolex watches. *Id.*

In concluding there was considerable evidence that Meece's activities constituted counterfeiting, the Court explained: "Although Rolex was still the source of the watches, it was not responsible for the non-genuine diamond bezels added by Meece, or for refinishing and placing diamonds in the genuine Rolex dials, or for any diamonds Meece added to the bracelets." *Id.* at 827. The Court further noted

---

[6] In *Bulova*, the defendant removed genuine Bulova watch movements, including the watch dial that displayed the Bulova trademark, from original Bulova watch cases. 328 F.2d at 21. The defendant then put the watch movements, still bearing the Bulova trademark, into diamond-decorated cases that were not made by Bulova. *Id.* The Seventh Circuit affirmed the district court's finding that the re-casing of the watch movement resulted in a "new construction" and the resulting watch "is no longer a Bulova watch." *Id.* at 23. However, the Seventh Circuit held that the district court erred by not completely enjoining the use of the Bulova trademark on the defendant's re-cased watches. *Id.* at 24.

that: "Meece, not Rolex, stood behind the watches; but the trademark suggested otherwise." *Id.* The Court remanded the case to the district court to determine whether Meece's activities constituted trademark counterfeiting and, if so, whether treble profits and attorneys' fees should be awarded. *Id.*

On remand, the district court found that Meece's use of Rolex's trademarks on both enhanced new watches and converted used watches did, in fact, constitute counterfeiting. *Meece*, 2000 WL 33582648, at *4. The district court further found that Rolex was entitled to treble profits and attorneys' fees under 15 U.S.C. § 1117(b), which are statutorily mandated when counterfeiting is found, absent extenuating circumstances. *Id.*

Multiple courts have followed *Bulova* and *Meece* and held that replacing the integral parts of Rolex-branded watches (including dials, bezels, and bracelets) with non-genuine parts, while retaining Rolex's trademarks on the watches, constitutes trademark infringement and counterfeiting. *See Michel*, 179 F.3d at 710; *Rolex Watch U.S.A., Inc. v. JBJ Distribs., Inc.*, No. H-99-1621, 2001 U.S. Dist. Lexis 27509, at *6–*11, *48–*51 (S.D. Tex. Aug. 20, 2001), *aff'd* 77 Fed. App'x. 208 (5th Cir. 2003); *Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc.*, No. CV 02-1089, 2002 WL 35656950, at *5–*9 (C.D. Cal. Nov. 8, 2002); *Rolex Watch U.S.A., Inc. v. Watch Empire LLC*, No. 13-009221, 2015 U.S. Dist. Lexis 131668, at *8–*11, *26–*27 (C.D. Cal. Sept. 29, 2015).

For example, in *Michel*, the defendant sold Rolex-branded watches that had been altered with non-genuine parts. *Michel*, 179 F.2d at 706. The defendant "customized" used Rolex watches by replacing bezels, dials, or bracelets, or by inserting diamonds into the watch dials without removing the original Rolex trademarks. *Id.* at 707. The district court held that the defendant's retention of Rolex's trademarks on the altered watches constituted trademark counterfeiting and enjoined the defendant from selling them without (1) adding permanent independent marks on the non-Rolex parts, and (2) including a written disclosure concerning the generic replacement parts on tags, invoices, promotions, and advertising. *Id.* at 706. Rolex appealed the scope of the injunction, arguing the injunction was inadequate because the changes made to the Rolex-branded watches were so basic that they result in a different product such that retaining Rolex's trademarks on the watches constituted trademark infringement and counterfeiting. *Id.* at 706.

The Ninth Circuit noted that "the Fifth Circuit addressed almost identical circumstances" in *Meece*. *Id.* at 710. The Ninth Circuit found this Court's reasoning in *Meece* (and the Seventh Circuit's decision in *Bulova*) persuasive, and found the defendant's alterations to the used Rolex watches resulted in a new product. *Id.* The Ninth Circuit further held that the disclosures required by the district court's injunction were insufficient to prevent confusion because they could not "convey[] basic changes that have been made to the watch" and "[n]or would the face of the

watch support a more adequate legend." *Id.* The Ninth Circuit concluded that the retention of Rolex's trademarks on the altered watches was "a misnomer – and a trademark infringement" and found that the district court abused its discretion in not completely enjoining the defendant's use of Rolex's trademarks on the altered watches. *Id.*

## III. THE DISTRICT COURT DEPARTED FROM *MEECE* AND OTHER ESTABLISHED PRECEDENT AND ERRED IN REFUSING TO COMPLETELY ENJOIN COUNTERFEIT ALTERED WATCHES WITH NON-GENUINE BEZELS AND NON-GENUINE DIALS

While the District Court cited *Meece* as the controlling precedent, it erred by entering an injunction that is inconsistent with the holding in *Meece* because it refused to enjoin BeckerTime from using non-genuine bezels and all non-genuine dials on Rolex-branded watches. ROA.2274–2276.

## A. The District Court Erred In Failing To Enjoin BeckerTime's Sale Of Counterfeit Watches With Non-Genuine Bezels

As this Court has previously determined, "the bezel on a Rolex watch is a necessary and integral part of the watch and serves a waterproofing function." *Meece*, 158 F.3d at 825. The evidence established, and the District Court correctly found, that bezels are necessary and integral parts of BeckerTime's Altered Watches. ROA.2160; ROA.1978; ROA.2674–2676.

Having made this finding, it was legal error for the District Court to exclude non-genuine bezels from Sections 1(a) and 1(b) of the injunction. The District

Court's exclusion of non-genuine bezels is contrary to established precedent that retaining Rolex's trademarks on watches altered with non-genuine integral components, including bezels, constitutes trademark counterfeiting. *Meece*, 158 F.3d at 825–827; *Meece*, 2000 WL 33582648, at *2–*4; *Michel*, 179 F.3d at 709–10.

The District Court's ***exclusion*** of non-genuine bezels in Sections 1(a) and (b), which enjoined whole watches, cannot be reconciled with its ***inclusion*** of non-genuine bezels in Section 1(c), which enjoined use of Rolex's trademarks in connection with non-genuine watch parts. ROA.2277. Footnote 3 of the injunction purported to explain the District Court's reasoning and cites to the holdings of *Meece* and *JBJ Distribs.*, but the District Court's reasoning in that footnote for not including bezels in Sections 1(a) and 1(b) offers a distinction without a difference. ROA.2277. Just as advertising "watches with a non-genuine bezel as a Rolex" watch is likely to confuse customers, offering for sale and selling such watches is equally likely to confuse consumers.[7] The District Court offered no factual explanation for the apparent distinction it was attempting to draw in its footnote, and there is none.

Moreover, in Section 1(e) of the injunction, the District Court enjoined BeckerTime from "displaying 'GENUINE ROLEX' in any disclosures in

---

[7] Rolex also disagrees with the last sentence in footnote 3 of the injunction, which is addressed later in this brief.

connection with any goods or services of watches that include (i) non-genuine (i.e. not made by Rolex) bezels…." ROA.2279. The District Court thus repeatedly acknowledged that watches displaying Rolex's trademarks with non-genuine bezels are not "genuine" Rolex watches.

Accordingly, Rolex requests that this Court direct the District Court to modify Sections 1(a) and 1(b) of the injunction to include non-genuine bezels.

## B. The District Court Erred In Failing To Enjoin BeckerTime's Sale Of Counterfeit Watches With Non-Genuine Dials

The evidence also established, and the District Court correctly found, that Rolex watch dials are necessary and integral components of Rolex watches. ROA.2160; ROA.1978; ROA.2677–2678. The District Court explained that one reason BeckerTime's use of Rolex's trademarks on Altered Watches is trademark counterfeiting is because "BeckerTime refinished and placed diamonds in the genuine Rolex dials." ROA.2168.

Despite these findings, the District Court did not enjoin all non-genuine dials but instead issued a limited injunction enjoining only "dials where the dial is stripped of the original paint/coating and markings, then repainted/recoated, and to which the Rolex Trademarks have been reprinted or reapplied, or to which other words have been added." ROA.2275–2276. Contrary to *Meece*, the District Court expressly excluded customized dials that do not involve the removal or reapplication of

Rolex's trademarks, and which may or may not have added diamonds, stones, or other embellishments.  ROA.2275–2276.

It was error for the District Court to not also enjoin watches with dials displaying Rolex's trademarks (1) that have been refinished (regardless of whether Rolex's original trademarks were removed or reapplied as part of the refinishing process), or (2) to which embellishments (such as aftermarket diamonds or stones) have been added.  The District Court's failure to enjoin all non-genuine dials is also contrary to established precedent that refinished dials and dials enhanced with diamonds or other stones, that retain Rolex's trademarks, constitute trademark counterfeiting.  *Meece*, 158 F.3d at 820, 825–827 (defendant "removed the dials, drilled holes in them, added diamonds, refinished the dials, and then reinstalled them on the watches"); *Meece*, 2000 WL 33582648, at *2–*4 (finding on remand that retention of Rolex's trademarks on watches enhanced with non-Rolex diamond dials constituted counterfeiting); *Michel*, 179 F.3d at 709–10 (retention of Rolex's trademarks on customized watches that included dials to which diamonds were added constituted counterfeiting); *JBJ Distribs.*, 2001 U.S. Dist. LEXIS 27509, at *8, *48 (defendant "used genuine Rolex dials that JBJ has altered by refinishing and/or adding diamonds" and the court enjoined the sale of watches displaying Rolex's trademarks altered with non-Rolex, integral and necessary parts, including dials).

The District Court's distinction between "customized" dials from which (i) Rolex's trademarks had been removed/reapplied, and (ii) Rolex's trademarks had not been removed/reapplied, was also without any factual support. There was no evidence that BeckerTime "customized" dials in a manner other than using a refinishing process that involved removing and reapplying Rolex's trademarks. ROA.2159; ROA.3055; ROA.17629–17631; ROA.17931–17932, ROA.18027–18028. Thus, the exception created by the District Court for customized dials, from which the original Rolex trademarks had not been removed and then reapplied, had no evidentiary support. The distinction drawn by the District Court's injunction language is legally erroneous and contrary to the District Court's acknowledgment, citing *Meece*, that "[b]earing the original mark does not immunize items from being counterfeit." ROA.2167.

This Court's reasoning in *Meece* did not hinge upon whether the defendant removed and reapplied Rolex's trademarks to the altered watches. On the contrary, the altered watches in *Meece* bore the original Rolex trademarks. 158 F.3d at 826 ("When an original mark is attached to a product in such a way as to deceive the public, the product itself becomes a 'counterfeit' just as it would if an imitation of the mark were attached.'" (quoting *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc.*, 106 F.3d 894 (9th Cir. 1997)); *see also Bulova* 328 F.2d at 21–24 (despite defendant's use of original movements and dials displaying

the original Bulova trademark, the Seventh Circuit found the retention of the Bulova trademark on the watch once the movement had been re-cased constituted an infringement). Similarly, *Michel* did not turn on whether Rolex's trademarks had been removed and reapplied: "The altered 'Rolex' watches retain their original Rolex trademarks on their dials." 179 F.3d at 707. The Ninth Circuit held that "under *Champion*, **the retention of Rolex's trademarks** on [the defendant's] altered watches is a misnomer – and a trademark infringement." *Id.* at 710 (emphasis added).

As these cases establish, it was legal error for the District Court to refuse to enjoin watches with dials that had been refinished or to which embellishments (including aftermarket diamonds or stones) have been added, so long as Rolex's trademarks had not been removed and reapplied to the dials. The mere retention of Rolex's trademarks on such altered dials renders the watches counterfeit.

Moreover, in Section 1(e) of the injunction, the District Court correctly enjoined BeckerTime from "displaying 'GENUINE ROLEX' in any disclosures in connection with any goods or services of watches that include … (ii) **non-genuine dials, including, but not limited to,** refinished dials (including a once genuine Rolex dial stripped of the original paint/coating and markings, then repainted/recoated, and to which the Rolex Trademarks have been reprinted or reapplied, or to which other words or embellishments (including diamonds, stones, etc.) have been added)…."

ROA.2279 (emphasis added). In view of the District Court's acknowledgement that watches displaying Rolex's trademarks with such non-genuine dials are not "genuine" Rolex watches, it was inconsistent and clearly erroneous for the District Court to not also enjoin the use of all such non-genuine dials in Sections 1(a) and 1(b) of the injunction.

Last, the District Court stated in footnote 3 of the injunction that "customers with no prior knowledge about watches can distinguish original from custom dials, but likely cannot distinguish between genuine and non-genuine bezels." ROA.2277. The District Court provided no evidentiary support for this statement because there was none and the evidence at trial was to the contrary. Nearly all of BeckerTime's Altered Watches included refinished dials. ROA.1976–1977. The District Court found that there was a likelihood of confusion created by BeckerTime's Altered Watches, which directly contradicts its assertion that customers can distinguish original from custom dials.

In sum, it was error for the District Court to not fully enjoin all non-genuine dials in Sections 1(a) and 1(b) of the injunction. Rolex requests that this Court direct the District Court to modify those sections of the injunction to include all non-genuine dials.

## IV. THE DISTRICT COURT ERRED IN AUTHORIZING BECKERTIME TO CREATE AND SELL NON-GENUINE DIALS DISPLAYING ROLEX'S TRADEMARKS

Section 1(c) of the injunction, which is directed to the advertising and sale of non-genuine watch parts, enjoined BeckerTime from using any of Rolex's trademarks in connection with certain non-genuine parts, including certain non-genuine dials. However, the District Court's language is incomplete and unclear. For example, the District Court enjoined "non-genuine dials, including, but not limited to, refinished dials where the [sic] (including a once genuine Rolex dial is stripped of the original paint/coating and markings, then repainted/recoated, and to which the Rolex Trademarks have been reprinted or reapplied, or to which other [sic] have been added."[8] ROA.2277.

Words are clearly missing from the District Court's language. For example, the phrase "refinished dials where the" is vague and unqualified. The phrase "or to which other have been added" is also vague and does not specify what "other" items are being referenced. At a minimum, the District Court's language is impermissibly vague and should be clarified. *See* Fed. R. Civ. P. 65(d); *State of La. v. Biden*, 45

---

[8] The injunction language proposed by Rolex stated: "non-genuine dials, including, but not limited to, refinished dials (including a once genuine Rolex dial stripped of the original paint/coating and markings, then repainted/recoated, and to which the Rolex Trademarks have been reprinted or reapplied, or to which other words or embellishments (including diamonds, stones, etc.) have been added)." ROA.2180. Thus, it appears that the District Court started with Rolex's proposed language and then deleted certain portions of it to create a more limited injunction that departs from *Meece* and other established precedent.

F.4th 841, 846 (5th Cir. 2022) ("To comply with Rule 65(d) a district court's order should state its terms specifically and describe in reasonable detail the conduct restrained or required.").

Moreover, if the District Court intended to not enjoin dials displaying Rolex's trademarks but to which other words or embellishments have been added, including aftermarket diamonds or stones, it was legal error to do so. As discussed in Section III *supra*, the sale of watches containing dials displaying Rolex's trademarks, but to which diamonds or other embellishments have been added, renders the watch counterfeit. Likewise, dials themselves that display Rolex's trademarks and to which embellishments, such as diamonds, have been added are counterfeit watch parts. It would be legal error for the District Court to exclude such dials from Section 1(c) of the injunction.

In sum, the District Court's language in Section 1(c) of the injunction is impermissibly vague and inconsistent with established precedent. Rolex requests that this Court direct the District Court to modify Section 1(c) to make clear all non-genuine dials are enjoined, including dials displaying Rolex's trademarks to which words or embellishments (including diamonds, stones, etc.) have been added.

## V.    THE DISTRICT COURT ERRED IN AUTHORIZING BECKERTIME TO CONTINUE TO CREATE AND SELL COUNTERFEIT ALTERED WATCHES WITH DISCLOSURES

In Section 1(a) of the injunction, the District Court permitted BeckerTime to continue to advertise and sell certain counterfeit Altered Watches so long as it makes "full disclosures" and inscribes "CUSTOMIZED BY BECKERTIME" on the back of the watches. ROA.2275. In Section 1(b), the District Court permitted BeckerTime to perform certain services in connection with counterfeit Altered Watches so long as, *inter alia*, it inscribes "CUSTOMIZED BY BECKERTIME" on the back of the watches. ROA.2277.

The District Court legally erred in permitting the continued creation and sale of materially altered/counterfeit watches with those disclosures. Courts have repeatedly rejected the assertion that disclosures in connection with counterfeit Altered Watches are sufficient to dispel consumer confusion.

In *Michel*, the Ninth Circuit held that the district court erred in permitting the defendant to continue to sell altered watches with certain disclosures. The Ninth Circuit found that "the district court's requirement that [the defendant] put an independent mark, such as 'Michel Co.,' on the non-Rolex parts" was not "adequate to prevent consumer confusion" because it would not "convey[] basic changes that have been made to the watch." *Michel*, 179 F.3d at 710. The Ninth Circuit also found: "Nor would the face of the watch support a more adequate legend." *Id.* In

*JBJ Distribs.*, the district court concluded that placing the defendant's own mark or other disclosures on altered watches or parts could not dispel confusion. 2001 U.S. Dist. LEXIS 27509, at *15 (explaining "JBJ's use of its own marks on its conversion watches bearing Rolex marks, altered dials bearing Rolex marks, and bracelets with genuine Rolex clasps was intermittent and does not cure the likelihood that consumers would be confused" and finding that "[t]he exposed area of the dial cannot accommodate an adequate, readable disclosure"); *see also Bulova*, 328 F.2d at 24 (finding the watch itself was insufficient to support an adequate disclosure conveying the alterations that had been made).[9]

Furthermore, even if it was not legal error for the District Court to allow the sale of counterfeit Altered Watches with disclosures, the District Court's allowance was clearly erroneous. BeckerTime bore the burden of showing that, if its original

_____

[9] Courts have also held in other contexts that disclosures are legally insufficient when used in connection with counterfeit goods. *See Chanel, Inc. v. Maslar*, No. 4:07-cv-01033, 2009 WL 10711657, at *8 (S.D. Tex. Nov. 19, 2009) (use of disclosures in connection with counterfeit goods is "evidence of bad faith and illustrative of the defendant's intent to capitalize on the value and renown of the plaintiff's trademarks" and "does not diminish the likelihood of [consumer] confusion"); *City of New York v. Blue Rage, Inc.*, 435 F. Supp. 3d 472, 489–90 (E.D.N.Y. 2020) (sale of counterfeit goods unlawful under the Lanham Act even when disclosures are used); *Audi AG v. D'Amato*, 381 F. Supp. 2d 644, 664 n.5 (E.D. Mich. 2005) (noting that "disclaimers are generally regarded as ineffective in counterfeiting cases" and explaining that allowing defendant to use the plaintiff's trademark by merely setting forth a disclaimer would contravene the fundamental principal in trademark law that a trademark owner has exclusive right to use its mark and exclude others from using it) (internal quotations omitted); *see also Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th Cir. 1975) ("The exact duplication of the symbol and the sale as the team's emblem satisfying the confusion requirement of the law, words which indicate it was not authorized by the trademark owner are insufficient to remedy the illegal confusion."), *cert. denied*, 423 U.S. 868 (1975).

disclosures litigated at trial were not adequate, that new, additional disclosures would be sufficient to prevent consumer confusion. *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1243 (10th Cir. 2006); *Home Box Off., Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311, 1316 (2d Cir. 1987). BeckerTime relied heavily on its existing disclosures at trial and lost. ROA.2992–3003. BeckerTime presented no evidence that any other disclosures would be effective in preventing consumer confusion. The District Court determined that "… BeckerTime's disclosures did not fully alleviate confusion" (ROA.2162–2163), and did not make any findings establishing that other disclosures would be effective. Thus, there was no factual basis for the District Court's language regarding "full disclosures" in Sections 1(a) and (b) of the injunction, and it was clear error for the District Court to include it.[10]

If anything, the evidence at trial showed that additional disclosures would not be effective in preventing confusion. BeckerTime repeatedly argued that it already provided full and complete disclosures in connection with its counterfeit Altered Watches. ROA.2992–3003. Yet, the evidence showed the ineffectiveness of those disclosures, and the District Court found that BeckerTime's disclosures contained false statements, were misleading, and caused confusion. ROA.2162–2163.

---

[10] The district court's statement in Section 1(a) of the injunction that BeckerTime shall provide "full disclosures in all advertising materials" is also impermissibly vague and further underscores that BeckerTime failed to come forward with evidence of any further specific "full" disclosures it could possibly provide.

Additionally, and importantly, the District Court recognized that: "'[P]ost-sale' or 'post-purchase' confusion is as indicative of a violation of the Lanham Act as direct purchaser confusion." ROA.2167. The undisputed evidence showed that watches sold by BeckerTime often get re-sold or passed on to other persons. ROA.2516; ROA.3091; ROA.17909–17910. The District Court also found that there was a "strong secondary market for used Rolex watches" and that "Rolex watches can last for decades if properly cared for." ROA.2159. There was no evidence that any other "full" disclosures in BeckerTime's advertising materials would eliminate post-purchase confusion. *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1078 (9th Cir. 2006) ("disclaimers do nothing to dispel post-purchase confusion").

There was also no evidence that to "etch[] or otherwise permanently inscribe[]" "CUSTOMIZED BY BECKERTIME" on the back of counterfeit Altered Watches (ROA.2275) would be effective at reducing confusion. BeckerTime again presented no evidence on this point and advocated this argument for the first time in its post-trial injunction briefing.[11] ROA.2259–2260. The District Court also made no findings supporting a conclusion that such an inscription would be effective but instead speculated, without any support, that: "The Court finds that this permanent

---

[11] In fact, had this issue been litigated, Rolex would have presented evidence that any etching or inscription is also ineffective because it can be easily removed.

injunction sufficiently negates confusion as whether a watch is fully and/or originally a Rolex. This is particularly true because no trademarks may be added to any part." ROA.2276. The District Court's faulty reasoning also ignores that even if Rolex's trademarks are not "added" to any watch parts, Rolex's trademarks are still retained on the counterfeit Altered Watches containing those parts.

BeckerTime presented no evidence that customers would understand the meaning of "customized" in the phrase "CUSTOMIZED BY BECKERTIME." To the contrary, the evidence showed that customers did not, in fact, understand what "customized" meant. ROA.19085–19087; ROA.18104–18106. BeckerTime already used the term "custom" or "customized" in describing its counterfeit Altered Watches. ROA.2997–3001; ROA.3646–3669. Yet, as the District Court found, there was still consumer confusion regarding BeckerTime's counterfeit Altered Watches. ROA.2161–2162.

There was also no evidence that consumers would be likely to see the inscription on the watch back. Even if the inscription were seen, it is meaningless because it does not convey any information regarding the nature of the customization and the watches could not support such a full description. *Michel*, 179 F.3d at 710 (watch could not support an adequate disclaimer); *JBJ Distribs.*, 2001 U.S. Dist. LEXIS 27509, at *15 ("The exposed area of the dial cannot accommodate an adequate, readable disclosure."). Indeed, adding BeckerTime's name to the watch

would likely increase confusion, as consumers would be likely to believe, for example, that a Rolex-branded watch inscribed with "CUSTOMIZED BY BECKERTIME" is an authorized collaboration between Rolex and BeckerTime. *See*, *e.g.*, *Vans, Inc. v. MSCHF Prod. Studio Inc.*, 22-CV-2156 (WFK) (RML), 2022 WL 1446681, at *4 (E.D.N.Y. Apr. 29, 2022) (consumers viewed defendant's shoes displaying defendant's mark and plaintiff's marks as a collaboration between the parties).

Finally, the District Court's reliance on *Hamilton Int'l Inc. v. Vortic LLC*, 13 F.4th 264 (2d Cir. 2021), in connection with the "CUSTOMIZED BY BECKERTIME," requirement was erroneous. ROA.2275. First, *Vortic* is not the law in the Fifth Circuit and is contrary to this Court's decision in *Meece*. More fundamentally, though, *Vortic* is distinguishable and involved materially different facts. Vortic took the movements of antique Hamilton-branded pocket watches (circa 1894 to 1950), restored them, and then created a new wristwatch (not a pocket watch) under its brand that included the restored Hamilton movement in a new case. *Id.* at 268. The watches retained Hamilton's trademarks, and Vortic also added its own marks to the watches. *Id.* at 268–69. Vortic sold the wristwatches under its own "Lancaster" trademark, as its own new and different watch that contained an historic Hamilton movement. *Id*. In contrast, here BeckerTime markets and sells its counterfeit Altered Watches as "Rolex" watches with a "Certificate of Authenticity"

signed by "a recognized Rolex expert" and not as "BeckerTime" watches. Merely adding "CUSTOMIZED BY BECKERTIME" to the watch back would not change that fact. The more similar cases are the *Meece* and *Michel* cases previously discussed, and there is no reason to depart from that established precedent.

In sum, the District Court erred by permitting BeckerTime to create, advertise, and sell certain counterfeit Altered Watches so long as it provides additional disclosures. Rolex requests that this Court direct the District Court to modify Sections 1(a) and (b) of the injunction to remove the language permitting BeckerTime to create, advertise, or sell certain counterfeit Altered Watches as long as it provides "full disclosures" and inscribes "CUSTOMIZED BY BECKERTIME" on the watches.

## VI. THE DISTRICT COURT ERRED IN AUTHORIZING BECKERTIME TO CREATE COUNTERFEIT ALTERED WATCHES AT THE REQUEST OF INDIVIDUAL CUSTOMERS

In Section 1(b) of the injunction, the District Court affirmatively authorized BeckerTime to advertise and make certain counterfeit Altered Watches at the request of individual customers, subject to certain limitations. ROA.2276–2277. As an initial matter, creating watches at the request of an individual customer was not an issue litigated in this case. There was no evidence that BeckerTime performs such services. BeckerTime does not operate a brick and mortar store and instead sells watches exclusively online. ROA.2161. Also, Mr. Becker admitted that making

watches at the request of customers was a "very, very small part" of BeckerTime's business. ROA.3046. Thus, it was unnecessary and erroneous for the District Court to expressly authorize BeckerTime to engage in such unlitigated activity.

It was also clear error for the District Court to include the individual customer request carve-out because making and selling counterfeit Altered Watches, even if done in response to customer request, is still likely to cause confusion. The District Court acknowledged that: "Although BeckerTime argues that most watches were sold in response to customer requests, '[o]nce a product is injected into commerce, there is no bar to confusion, mistake, or deception occurring at some future point in time.'" ROA.2168–2169 (quoting *Rolex v. Canner*, 645 F. Supp. at 493). While the District Court included a provision in Section 1(b) of the injunction requiring that "CUSTOMIZED BY BECKERTIME" be placed on the watch back, as explained in Section V *supra*, there was no evidence that this inscription would remain on the watch or reduce any future confusion once the watch is injected into commerce.

Moreover, BeckerTime is now an adjudicated infringer and should not be entitled to a "counterfeiting on demand" exception to the Lanham Act. As such, BeckerTime "'should thereafter be required to keep a safe distance away from the margin line—even if that requirement involves a handicap as compared with those who have not disqualified themselves.'" *Chevron Chem.*, 659 F.2d at 705; *see also Sunbeam Prods.*, 123 F.3d at 260; *Eskay Drugs, Inc. v. Smith, Kline & French*

*Labs.*, 188 F.2d 430, 432 (5th Cir. 1951); *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 375–76 (4th Cir. 2021); *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1178–79 (11th Cir. 2002). Because BeckerTime is an adjudicated infringer, it was error for the District Court to authorize BeckerTime to create counterfeit Altered Watches at the request of individual customers. The individual customer exception language adopted by the District Court is vague and subject to abuse in a manner that would allow BeckerTime to continue with many activities that would otherwise be enjoined under the guise of that exception.

In sum, the District Court erred by authorizing BeckerTime to make certain counterfeit Altered Watches the request of individual customers. Rolex requests that this Court direct the District Court to modify Section 1(b) of the injunction to remove the individual customer exception.

## VII. GIVEN THAT BECKERTIME COMMITTED DELIBERATE COUNTERFEITING, THE DISTRICT COURT ABUSED ITS DISCRETION IN REFUSING TO AWARD ROLEX ANY MONETARY RELIEF OR ATTORNEYS' FEES UNDER 15 U.S.C. § 1117(b)

### A. The District Court Abused Its Discretion In Finding BeckerTime's Deliberate Counterfeiting Did Not Bar Laches

The District Court found that the evidence at trial showed that "BeckerTime intended to benefit from Rolex's reputation and goodwill" in deliberately advertising and selling counterfeit Altered Watches (ROA.2170) by, *inter alia*: (1) using the phrase "Rolex certified watchmaker" which was "confusing and suggests an

affiliation or sponsorship" (ROA.2161); (2) "mislabel[ing] watches to appear more valuable than they are" (ROA.2160); (3) sometimes printing the phrase "Superlative Chronometer Officially Certified" on its Altered Watches but "not investigat[ing] whether its watches meet those accuracy standards" (ROA.2160); and (4) making disclosures that were misleading, deceptive and caused consumer confusion (ROA.2161–2162).

BeckerTime's marketing and sale of Altered Watches constituted intentional use of Rolex's marks knowing the marks to be counterfeit. *Meece*, 2000 WL 33582648, at *4. BeckerTime intentionally used Rolex's trademarks at issue.[12] Each Altered Watch that BeckerTime advertised, offered for sale, and sold displayed one or more of Rolex's trademarks. ROA.1977. BeckerTime created most of its Altered Watches by first purchasing used Rolex watches or separate watch parts, such as

---

[12] Other evidence presented at trial, which the District Court did not acknowledge in its findings, further shows that BeckerTime deliberately infringed and acted in bad faith. For example, BeckerTime published an article in September 2013 on its website warning customers about "hybrid Frankenwatches," which "replace original parts with replica parts," and advising customers that "when looking for a wristwatch, be sure that all parts are genuine and to work from a trusted dealer such as BeckerTime." ROA.18577. That same year, BeckerTime also knew that a court had ruled that passing off altered Rolex watches as original Rolex watches constitutes trademark infringement. ROA.18564–18566; ROA.17813–17815; ROA.3091–3093. In December 2013, BeckerTime published another article entitled "**MISREPRESENT ROLEX = PAY A BIG FINE**" discussing the results of a successful lawsuit Rolex had filed against another company that sold Altered Watches. ROA.17799–17800; ROA.17802; ROA.18564–18566. BeckerTime acknowledged in the article that: "Any deviation of parts that go into Rolex watches, the use of the Rolex logo, and any variation of being an authorized Rolex dealer all fall into unauthorized [use] of Rolex trademarks and licenses," and "Rolex considers any of their watches as unauthentic the moment any aftermarket part is installed . . . ." ROA.18564–18566. Nevertheless, BeckerTime continued to sell Altered Watches, which shows a clear and willful intent to infringe and to cause consumer confusion.

watch heads, refinished dials, aftermarket bezels, and aftermarket bracelets or bracelet links. ROA.17600; ROA.17623–17624; ROA.17629–17631; ROA.17930–17932; ROA.17946; ROA.17948; ROA.17953; ROA.17988. BeckerTime then modified those watches and/or used the purchased watch parts to create or assemble a variety of models of Altered Watches displaying Rolex's trademarks. ROA.17623–17624; ROA.2942–2943. BeckerTime intentionally used Rolex's trademarks in creating the Altered Watches and displayed images of the Altered Watches bearing Rolex's marks on its websites, prominently describing the watches as "**GENUINE ROLEX**." ROA.1975; ROA.17750–17751; ROA.18539–18544; ROA.2970–2971; ROA.3086–3087; ROA.16460–16517. As a result, the District Court's own findings support the conclusion that BeckerTime's deliberate actions constituted unclean hands barring it from relying on the equitable defense of laches as a defense. Therefore, the District Court abused its discretion in finding that laches barred Rolex from recovering monetary relief. *See Bd. of Supervisors*, 550 F.3d at 490 ("A defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense.").

The District Court, however, appeared to justify BeckerTime's deliberate counterfeiting and intentional freeriding on Rolex's reputation and goodwill by contending that "[i]t is inherent in the resale of luxury goods that sellers wish to

benefit from the reputation and goodwill of the brand name" and then concluding "[t]his is not sufficient to show unclean hands necessary to prevent a party from benefiting from laches." ROA.2170. This statement ignores the fact that the concept of nominative fair use *does not apply to counterfeiters* and that the District Court rejected this defense. ROA.2163. The District Court found that BeckerTime was not involved in the mere "resale of luxury goods" but instead sells counterfeit watches that "are materially different than those sold by Rolex." *See*, *e.g.*, ROA.2171 ("BeckerTime is not using Rolex marks to truthfully identify a Rolex watch, but instead their own, modified watch.").

BeckerTime knew its Altered Watches included non-genuine, integral parts, such as non-genuine bezels and refinished dials. ROA.1976–1977. BeckerTime knew that the refinished dials were created by scraping the dial, painting or coating the dial, and then applying copies of Rolex's trademarks to the dial, all without the consent of Rolex. ROA.3055; ROA.17629–17631; ROA.17687; ROA.17930–17932; ROA.18027–18028. There should be no exception that permits BeckerTime as a counterfeiter to benefit from "the reputation and goodwill of the [Rolex] brand." ROA.2170.

Nor do BeckerTime's purported disclosures demonstrate that BeckerTime acted with clean hands and in good faith. ROA.2161–2162. To the contrary, the District Court found that BeckerTime's own records showed that the disclosures

were not effective, consumers who reviewed them remained confused, and "Beckertime's disclosures did not fully alleviate confusion." ROA.2161–2162 (also finding that the complaints BeckerTime received regarding its Altered Watches "show[] some actual confusion"). The District Court further found that some of BeckerTime's disclosures were misleading and deceptive, which is the antithesis of acting in good faith. ROA.2162 ("The disclosures fail to state that the watches are labelled as different models than the actual Rolex model the watch is. Further, the disclosures mislead purchasers into thinking there is a comparable genuine Rolex, when in fact, there is not always one.").

BeckerTime did not just sell counterfeit Rolex-branded watches. BeckerTime took affirmative, deliberate steps to fuel the confusion caused by those sales. It provided a self-styled "Certificate of Authenticity" with each watch that includes a signature line for a "Rolex Expert." ROA.3448–3455. But, as the District Court found, "Rolex has never certified BeckerTime, its watchmaker, or any of the watches that BeckerTime sells." ROA.2160. This is further evidence of deception and BeckerTime's bad faith and intent to mislead consumers.[13] The District Court's own findings demonstrate that BeckerTime intentionally infringed Rolex's trademarks

---

[13] The deceptive nature of Mr. Becker's illegible signature is further apparent from comparing his non-recognizable signature on the Certificate of Authenticity with his legible signature on the Lifetime Trade Up certificate that BeckerTime provides customers. ROA.16034; ROA.3135, ROA.3137–3138.

with a bad faith intent to capitalize on Rolex's goodwill.[14]  Thus, the District Court

abused its discretion in allowing a counterfeiter like BeckerTime to avail itself of a

laches defense.  *Bd. of Supervisors*, 550 F.3d at 490.

**B.      The District Court Abused Its Discretion In Determining That BeckerTime Had Proved Undue Prejudice And That Laches Applied**

Even assuming *arguendo* that BeckerTime acted in good faith in its

counterfeiting activities, which the District Court did not find in evaluating the digits

of confusion, laches requires that BeckerTime show by a preponderance of evidence

that it suffered undue prejudice caused by Rolex's alleged delay in filing suit.  *Bd.*

*of Supervisors*, 550 F.3d at 489–90.  The District Court found that "BeckerTime has

not invested in a large amount of Rolex inventory" but also stated "BeckerTime

likely would not have shifted its business model to be reliant on the sale of altered

Rolex watches" if Rolex had brought suit earlier.  ROA.2163, ROA.2170.  The

District Court's speculation regarding alleged prejudice is unsupported by any facts

in the record and was clearly erroneous.  *See Pennzoil-Quaker State Co. v. Miller*

*Oil and Gas Operations,* 779 F.3d 290, 299 (5th Cir. 2015) ("we have equated undue

---

[14] At a minimum, BeckerTime's continued sale of Altered Watches constituted willful blindness as to the counterfeit nature of the goods.  Willful blindness is sufficient to show knowledge that a mark is counterfeit under Section 1117(b).  *See* 5 McCarthy on Trademarks and Unfair Competition § 30:94 (5th ed. 2021) ("McCarthy") ("The requirement that defendant knew the goods were counterfeit can be proven either by evidence of either defendant's awareness or of defendant's 'willful blindness' to the counterfeit nature of the goods.") (citing Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12076-12077 (Oct. 10, 1984)); *see also Louis Vuitton*, 875 F.2d 584, 590 (7th Cir. 1989) (stating that "[w]illful blindness is knowledge enough" under Section 1117(b)).

prejudice with 'making major business investments' in reliance on the assumption that the defendant could use the mark").

As an initial matter, the "valuable" portion of BeckerTime's business involving the sale of Altered Watches was activity that the District Court found constituted counterfeiting and was done with an intent to benefit from Rolex's reputation and goodwill. ROA.2170. Further, there was no evidence that BeckerTime has made major business investments that it would not have undertaken but for Rolex's alleged delay in filing this suit. On the contrary, the evidence showed that BeckerTime's business has remained largely unchanged during the time period at issue.[15]

---

[15] In 2013, BeckerTime moved from Mr. Becker's home to leased office space. ROA.3028; ROA.3095. In the same year, BeckerTime published two articles on its website, noted *supra*, demonstrating that BeckerTime knew what it was doing was wrong. ROA.18564–18566; ROA.18576–18578. Regardless, since 2013, BeckerTime has not expanded its building space. ROA.3095–3096. There was no evidence presented at trial of any substantial capital investment, let alone the amount of any investment, BeckerTime made into its business as a result of Rolex's alleged delay. BeckerTime also presented no evidence regarding any investment that it would not have made but for Rolex's alleged delay in filing this lawsuit. Moreover, a substantial portion of BeckerTime's business consists of selling fully genuine, used Rolex watches. ROA.3102. BeckerTime sells these genuine used Rolex watches through the same channels that it sells *Altered Watches*. ROA.3102. BeckerTime did not present any evidence differentiating between any purported investments it made that related to its Altered Watch business specifically as compared to its genuine used watch business. While Mr. Becker testified at trial that BeckerTime would probably not need all of its four current employees if it was not able to sell Altered Watches, such testimony was speculation and, in any event, does not establish "undue" prejudice. ROA.3096; ROA.3147.

**C.** **The District Court Erred In Not Awarding Treble Profits And Attorneys' Fees Under 15 U.S.C. § 1117(b)**

The Lanham Act, at 15 U.S.C. § 1117(b), provides that in a case involving use of a counterfeit mark:

> …the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of—(1) intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services[.]

The availability of treble profits and attorneys' fees under Section 1117(b) is intended to serve as a deterrent against counterfeiting. *Louis Vuitton*, 875 F.2d at 588 (Section 1117(b) is a "severe statute" and treble profits and attorneys' fees "is mandatory" absent extenuating circumstances, which "is extremely narrow.").

In *Meece*, the Fifth Circuit remanded to the district court to determine whether Meece's activities at issue constituted trademark counterfeiting with further instruction that "if they were, it should, pursuant to § 1117(b), award profits (trebled) and attorneys' fees to Rolex, unless it finds 'extenuating circumstances.'" *Meece*, 158 F.3d at 827. On remand, the district court determined that "Rolex is entitled to treble profits and to attorneys' fees under Section 1117(b) because the use of the Rolex marks on watches Meece knew were assembled without Rolex's approval constitutes intentional use of a mark knowing it to be counterfeit." *Meece*, 2000 WL 33582648, at *4. While the District Court found BeckerTime had engaged in

counterfeiting of Rolex's trademarks, it neglected to address whether Rolex was entitled to treble profits and attorneys' fees under Section 1117(b). Instead, the District Court only found that "Rolex was not entitled to disgorgement because BeckerTime is protected by the doctrine of laches." ROA.2171.

Given the District Court's findings that BeckerTime had deliberately used Rolex's trademarks in its counterfeiting activities, the District Court was required under Section 1117(b) to award Rolex three times BeckerTime's profits and Rolex's attorneys' fees, unless the District Court found "extenuating circumstances." There simply was no evidence of any extenuating circumstances presented at trial.[16]

The "extenuating circumstance" exception is "extremely narrow." *See Louis Vuitton*, 875 F.2d at 588; *see also Dunkin' Donuts Inc. v. Mercantile Ventures*, 1994 WL 93257 (5th Cir. 1994) (unpublished) (describing the language of 1117(b) as "virtually mandatory language"); 5 MCCARTHY § 30:94 ("Congress has emphasized that it will be a 'rare case' and a 'highly unusual' instance in which a defendant who has trafficked in goods that he or she knows to be counterfeit can show some 'extenuating circumstances' justifying that treble damages not be assessed.") (citing

---

[16] If BeckerTime wanted to rely upon extenuating circumstances, it was required to plead any such extenuating circumstances as an affirmative defense. *See Louis Vuitton*, 875 F.2d at 590 ("We needn't worry about the defense of extenuating circumstances to treble-damage or treble-profit liability under section 1117(b), because as an affirmative defense it must be pleaded or otherwise presented to the district court. It was not, and is therefore waived."). BeckerTime never raised extenuating circumstances as a defense and thus waived any such argument.

Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12083 (Oct. 10, 1984)). For instance, Congress provided the following examples of extenuating circumstances: "it may not be appropriate to impose treble damages and attorneys' fees when the defendant is an unsophisticated individual, operating on a small scale, whose conduct posed no risk to the public's health or safety, and whom the imposition of treble damages would mean that he or she would be unable to support his or her family." *See* Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12083 (Oct. 10, 1984).

Laches are not within the limited extenuating circumstances contemplated by Congress. There was also no evidence of other facts that might possibly support a finding of extenuating circumstances. BeckerTime was sophisticated and operating its counterfeiting activities on a relatively large scale. ROA. 1976–1977. Further, no evidence was proffered that BeckerTime could not pay a treble profit award or that such an award would cause loss of the ability to support any families.

In sum, no extenuating circumstances existed, and the District Court committed legal error in not considering Section 1117(b) and abused its discretion by not determining that Rolex was entitled to three times BeckerTime's profits made from selling Altered Watches and awarding Rolex its attorneys' fees incurred in this case. Rolex requests that this Court direct the District Court to find that Rolex is

entitled to treble profits and attorneys' fees under Section 1117(b) and to determine those amounts.

## CONCLUSION

The District Court erred in the scope of the injunction that it entered. Rolex requests that this Court remand to the District Court with instructions, in accord with this Court's binding precedent, to: (1) revise Section 1(a) of the injunction to include non-genuine bezels and all non-genuine dials, and remove the exception expressly permitting certain non-genuine dials (including with "full disclosures"); (2) revise Section 1(b) of the injunction to include non-genuine bezels and all non-genuine dials, and remove the exception expressly authorizing BeckerTime to repair, refurbish, or customize Rolex watches at the specific request of a customer; and (3) revise Section 1(c) of the injunction to include all non-genuine dials. In addition, Rolex requests that this Court reverse the District Court's finding of laches and remand to the District Court to determine the amount of BeckerTime's profits to which Rolex is entitled and the amount of attorneys' fees to be awarded to Rolex.

Respectfully submitted,

Date: December 23, 2022

*/s/ Craig S. Summers*

KNOBBE, MARTENS, OLSON & BEAR LLP
Craig S. Summers
Matthew S. Bellinger
Brandon G. Smith
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Email:  craig.summers@knobbe.com
        matt.bellinger@knobbe.com
        brandon.smith@knobbe.com

GIBNEY, ANTHONY & FLAHERTY LLP
Brian W. Brokate
Beth M. Frenchman
Jeffrey E. Dupler
Maja Szumarska
650 Fifth Avenue, 10th Floor
New York, NY 10019
Telephone: (212) 688-5151
Facsimile: (212) 688-8315
Email:  bwbrokate@gibney.com
        bfrenchman@gibney.com
        jdupler@gibney.com
        mszumarska@gibney.com

SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Theodore C. Max
Tyler E. Baker
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701
Email:  tmax@sheppardmullin.com
        tbaker@sheppardmullin.com

SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Daniel Syed
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
Telephone: (469) 391-7400
Facsimile: (469) 391-7401
Email:  dsyed@sheppardmullin.com

*Attorneys for Plaintiff-Appellant/Cross-Appellee,*
*Rolex Watch U.S.A., Inc.*

# CERTIFICATE OF SERVICE

I certify that on December 23, 2022, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF-system. Participants in the case who are registered CM/ECF-users will be served by the appellate CM/ECF-system:

> Andy Nikolopoulos
> FOX ROTHSCHILD LLP
> Saint Ann Court
> 2501 N. Harwood Street, Suite 1800
> Dallas, TX 75201
> Email: anikolopoulos@foxrothschild.com
>
> Michael Beylkin
> FOX ROTHSCHILD LLP
> 1225 17th Street
> Suite 2200
> Denver, CO 80202
> Email: mbeylkin@foxrothschild.com

Date: December 23, 2022       /s/ *Craig S. Summers*

KNOBBE, MARTENS, OLSON & BEAR LLP
Craig S. Summers

*Attorney for Plaintiff-Appellant/Cross-Appellee,*
*Rolex Watch U.S.A., Inc.*

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. Rule 32 and Fifth Circuit Rule 32.  This brief contains 12,860 words, excluding the parts of the brief exempt by Fed. R. App. P. Rule 32(f) and Fifth Circuit Rule 32.2.

2.    This brief complies with the typeface requirements of Fed. R. App. P. Rule 32(a)(5) and Fifth Circuit Rule 32.1, and the type style requirements of Fed. R. App. P. Rule 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point font Times New Roman, and 12 point font Times New Roman for footnotes.

Date:  December 23, 2022      */s/ Craig S. Summers*

                                      KNOBBE, MARTENS, OLSON & BEAR LLP
                                        Craig S. Summers

                                        *Attorney for Plaintiff-Appellant/Cross-Appellee,*
                                        *Rolex Watch U.S.A., Inc.*

5663227