No. 22-10866

# In the United States Court of Appeals for the Fifth Circuit

ROLEX WATCH USA, INC.
            *Plaintiff-Appellant / Cross-Appellee*,

*v.*

BECKERTIME, LLC; MATTHEW BECKER,
            *Defendants-Appellees / Cross-Appellants.*

On Appeal from the U.S. District Court for the Northern District of Texas,
Fort Worth Division
Case No. 4:20-cv-1060

## PRINCIPAL & RESPONSE BRIEF OF DEFENDANTS-APPELLEES / CROSS-APPELLANTS

ANDY NIKOLOPOULOS
FOX ROTHSCHILD LLP
Saint Ann Court
2501 N. Harwood Street, Suite 1800
Dallas, TX 75201
(214) 231-5776 - direct
(972) 404-0516 – fax
anikolopoulos@foxrothschild.com

MICHAEL BEYLKIN (Lead Counsel)
FOX ROTHSCHILD LLP
1225 17th Street, Suite 2200
Denver, CO 80202
(303) 446-3871 - direct
(303) 292-1300 - fax
mbeylkin@foxrothschild.com

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5TH CIR. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Defendants/Appellees & Cross-Appellants**:

BeckerTime LLC, a Texas Limited Liability Company

Matthew Becker, a resident of Texas

**Counsel for Defendants/Appellees & Cross-Appellants**:

Michael Beylkin
FOX ROTHSCHILD LLP
1225 17th Street, Suite 2200
Denver, CO 80202
(303) 446-3871
mbeylkin@foxrothschild.com

Andy Nikolopoulos
FOX ROTHSCHILD LLP
Saint Ann Court
2501 N. Harwood Street, Suite 1800
Dallas, TX 75201
(214) 231-5776
anikolopoulos@foxrothschild.com


**Plaintiff/Appellant & Cross-Appellee**:

Rolex Watch USA, Inc., a New York corporation

**Counsel for Plaintiff/Appellant & Cross-Appellee**:

Craig Summers
Matthew Bellinger

Brandon Smith
KNOBBE, MARTENS, OLSON & BEAR LLP
2040 Main Street
Irvine, CA 92614
(949) 760-0404

Brian Brokate
Beth Frenchman
Jeffrey Dupler
Maja Szumarska
GIBNEY, ANTHONY & FLAHERTY LLP
650 Fifth Avenue
New York, NY 10019
(212) 688-5151

Theodore C. Max
Tyler E. Baker
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112
(212) 653-8700

Daniel Syed
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

James Sowder
THOMPSON, COE, COUSINS & IRONS LLP
700 North Pearl Street, 25th Floor
Dallas, TX 75201
(214) 871-8200

**STATEMENT REGARDING ORAL ARGUMENT**

Defendants-Appellees/Cross-Appellants BeckerTime LLC and Matthew Becker respectfully submit that because this cross-appeal involves questions as to the appropriate Lanham Act analytical framework under U.S. Supreme Court law for the retention of manufacturer's marks on decades'-old, vintage watches by an independent retailer in the context of repairing, refurbishing, and customizing those watches, oral argument is appropriate.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CONTENTS..................................................................................... iv

TABLE OF AUTHORITIES ............................................................................. vii

JURISDICTIONAL STATEMENT ......................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE.............................................................................3

SUMMARY OF THE ARGUMENT ..................................................................11

ARGUMENT ....................................................................................................14

I.      The District Court Erred By Failing to Apply the Correct
        Factors and Legal Principles Applicable to Refurbished and
        Customized Used (Vintage) Products Bearing a Manufacturer's
        Trademark.................................................................................................14

        A.      Standard of Review .........................................................................14

        B.      *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125
                (1947) ..............................................................................................15

        C.      The District Court Improperly Applied the Traditional
                Confusion Factors Without Any Ancillary Analysis
                Required Under the *Champion* Framework .......................................17

                1.      Factors One and Two are Indisputably Irrelevant ...................19

                2.      Factor Three: Rolex Did Not Meet its Burden to
                        Show a Relevant Similarity in Products as
                        BeckerTime Deals Exclusively in Vintage
                        Watches ..................................................................................20

                3.      Factor Four: There is No Relevant Identity in
                        Retail Outlets and Purchasers ..................................................21

4.      Factor Five: There is No Relevant Identity in the Advertising Media.....................................22

5.      Factor Six: There is No Evidence Showing BeckerTime's Intent to Confuse ...............................23

6.      Factor Seven: The Only Customer Communications Admitted at Trial Actually Show Full Disclosure by BeckerTime ...................................24

7.      Factor Eight: Buyers of Rolex Watches, Whether New or Used, are Sophisticated and Can Be Expected to Exercise Care ......................................26

D.      The Proper Application of the *Champion* Framework........................27

1.      BeckerTime's Disclosures Were Clear and Fully Apprised Purchasers of the Changes and Repairs Made to the Vintage Rolex Watches .......................................32

2.      There was No Evidence That the Usual Purchaser Would Associate Rolex with Any Inferior Qualities of BeckerTime's Watches .........................................33

II.      If the District Court Correctly Found Infringement, the Injunction it Imposed Comports with the Court's Factual Findings and All Applicable Equitable and Legal Principles ......................35

A.      Rolex Incorrectly Relies Upon Distinguishable Cases Involving Different Conduct and Different Defendants to Manufacture the Appearance of Error in the Injunction.....................38

B.      The District Court Correctly Imposed a Specifically-Tailored Injunction Permitting the Sale of Aftermarket Bezels ......................................................................41

C.      The District Court Correctly Imposed a Specifically-Tailored Injunction Permitting Customized Dials Under Limited Circumstances........................................................43

D.      The District Court Did Not Authorize BeckerTime to Create and Sell Counterfeit Watches ..................................................44

III.   The District Court Correctly Applied Principles of Equity to
       Bar Monetary Recovery by Rolex, and Rolex Has Waived Any
       Arguments Concerning Trebling or Attorneys' Fees under the
       Lanham Act by Failing to Move for Such Relief Below ............................46

       A.   The District Court Correctly Determined There Is
            Insufficient Evidence of Deliberate Counterfeiting by
            BeckerTime ........................................................................................48

       B.   The District Court Properly Found Sufficient Evidence
            that BeckerTime Was Unduly Prejudiced From Rolex's
            Delay .................................................................................................55

       C.   The District Court Did Not Abuse Its Discretion in
            Refusing to Treble Any Equitable Disgorgement to Rolex
            and Rolex Waived Any Right to Attorneys' Fees ............................59

CONCLUSION ...................................................................................................62

CERTIFICATE OF SERVICE ...........................................................................64

CERTIFICATE OF COMPLIANCE ....................................................................65

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Alpha Chi Omega*,
  708 F.3d 614 (5th Cir. 2013) ..........................................37, 52, 56, 58

*Alarm.com, Inc. v. Securenet Techs. LLC*,
  345 F. Supp. 3d 544 (D. Del. 2018)..................................................52

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
  518 F.3d 321 (5th Cir. 2008) .............................................................18

*Amazing Spaces, Inc. v. Metro Mini Storage*,
  608 F.3d 225 (5th Cir. 2010) ..............................................................49

*Arcona, Inc. v. Farmacy Beauty, LLC*,
  976 F.3d 1074 (9th Cir. 2020) ............................................................49

*Armco, Inc. v. Armco Burglar Alarm Co., Inc.*,
  693 F.2d 1155 (5th Cir. 1982) ............................................................48

*Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*,
  550 F.3d 465 (5th Cir. 2008) ..............................................................54

*Bogan v. MTD Consumer Grp., Inc.*,
  919 F.3d 332 (5th Cir. 2019) ..............................................................46

*Brandtjen & Kluge, Inc. v. Prudhomme*,
  765 F. Supp. 1551 (N.D. Tex. 1991) .............................................*passim*

*Cartier v. Symbolix, Inc.*,
  454 F. Supp. 2d 175 (S.D.N.Y. 2006) ...............................................42

*Champion Spark Plug Co. v. Sanders*,
  156 F.2d 488 (2d Cir. 1946) .........................................................28, 32

*Champion Spark Plug Co. v. Sanders*,
  331 U.S. 125 (1947)........................................................................*passim*

*Champion Spark Plug Co. v. Sanders*,
61 F. Supp. 247 (E.D.N.Y. 1945) ......................................................30

*Codename Enters., Inc. v. Fremantlemedia N.A., Inc.*,
2018 WL 3407709 (S.D.N.Y. Jan. 12, 2018) ..................................25

*Conan Props., Inc. v. Conans Pizza, Inc.*,
752 F.2d 145 (5th Cir. 1985) ....................................................37, 52

*E.E.O.C. v. Premier Operator Servs., Inc.*,
75 F. Supp. 2d 550 (N.D. Tex. 1999) .............................................57

*Elvis Presley Enter., Inc. v. Capece*,
141 F.3d 188 (5th Cir. 1998) ..........................................................14

*Farouk Sys. Inc. v. Target Corp.*,
2008 WL 181130 (5th Cir. Jan. 22, 2008) .....................................28

*Frostie Co. v. Dr. Pepper Co.*,
361 F.2d 124 (5th Cir. 1966) ..........................................................37

*Garza v. Citigroup Inc.*,
881 F.3d 277 (3d Cir. 2018) ...........................................................61

*Georgia-Pac. Consumer Prod. LP v. von Drehle Corp.*,
781 F.3d 710 (4th Cir. 2015) ..........................................................59

*Gucci Am., Inc. v. Accents*,
994 F. Supp. 538 (S.D.N.Y. 1998) .................................................60

*Hamilton Int'l Ltd. v. Vortic LLC*,
13 F.4th 264 (2d Cir. 2021) ....................................................*passim*

*Hamilton Int'l Ltd. v. Vortic LLC*,
414 F. Supp. 3d 612 (S.D.N.Y. 2019) ............................................31

*Hamilton Int'l Ltd. v. Vortic LLC*,
486 F. Supp. 3d 657 (S.D.N.Y. 2020) ...........................20, 21, 25, 50

*Idaho Golf Partners, Inc. v. Timberstone Mgmt., LLC*,
2017 WL 3531481 (D. Idaho Aug. 17, 2017) .................................53

*Johnson v. Hospital Corp. of Am.*,
   95 F.3d 383 (5th Cir. 1996) ................................................................14

*Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*,
   285 F.3d 848 (9th Cir. 2002) ..............................................................41

*Levi Strauss & Co. v. Shilon*,
   121 F.3d 1309 (9th Cir. 1997) ............................................................46

*Louis Vuitton Malletier S.A.S. v. Sandra Ling Designs, Inc.*,
   2021 WL 3742024 (S.D. Tex. Aug. 24, 2021) ....................................49

*Love v. Tyson Foods, Inc.*,
   677 F.3d 258 (5th Cir. 2012) ..............................................................60

*Luhr Bros. v. Crystal Shipowning, PTE Ltd.*,
   325 F.3d 681 (5th Cir. 2003) ..............................................................47

*Mahindra & Mahindra, Ltd. v. FCA US, LLC*,
   2022 WL 4299770 (6th Cir. Sept. 19, 2022) ......................................37

*Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*,
   2009 WL 3075205 (N.D. Tex. Sept. 25, 2009) ..............................19, 29

*Neles-Jamesbury, Inc. v. Valve Dynamics, Inc.*,
   974 F. Supp. 964 (S.D. Tex. 1997).................................................19, 22, 29

*Neutron Depot, LLC v. Bankrate, Inc.*,
   2018 WL 3014435 (W.D. Tex. May 1, 2018) ......................................48

*Nitro Leisure Prod., L.L.C. v. Acushnet Co.*,
   341 F.3d 1356 (Fed. Cir. 2003) .....................................................*passim*

*Pebble Beach Co. v. Tour 18 I Ltd.*,
   155 F.3d 526 (5th Cir. 1998) ........................................................47, 48

*Pennzoil-Quaker State Co. v. Miller Oil & Gas Ops.*,
   779 F.3d 290 (5th Cir. 2015) ..............................................................55

*Proactive Env't Prod. Int'l, LLC v. Pine Env't Servs., LLC*,
   2021 WL 3025481 (M.D. Fla. May 20, 2021) ....................................15

*Retractable Techs., Inc. v. Becton Dickinson & Co.,*
   919 F.3d 869 (5th Cir. 2019) ........................................................47, 48

*Rolex Watch U.S.A., Inc. v. JBJ Distribs., Inc.,*
   2001 U.S. Dist. Lexis 27509 (S.D. Tex. Aug. 20, 2001)..............38, 40

*Rolex Watch U.S.A., Inc. v. Michel Co.,*
   179 F.3d 704 (9th Cir. 1999) ...............................................38, 39, 42

*Rolex Watch U.S.A. v. Meece,*
   158 F.3d 816 (5th Cir. 1998) ........................................................38, 39

*Romag Fasteners, Inc. v. Fossil Grp., Inc.,*
   140 S. Ct. 1492 (2020)........................................................................47

*Seatrax, Inc. v. Sonbeck Intern., Inc.,*
   200 F.3d 358 (5th Cir. 2000) ........................................................48, 62

*Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.,*
   912 F.3d 805 (5th Cir. 2019) ............................................................26

*Sw. Recreational Indus., Inc. v. FieldTurf, Inc.,*
   2002 WL 32783971 (5th Cir. Aug. 13, 2002) ...................................48

*Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.,*
   951 F.2d 684 (5th Cir. 1992) ............................................................61

*U.S. Surgical Corp. v. Orris, Inc.,*
   5 F. Supp. 2d 1201 (D. Kan. 1998)...............................................19, 20

*United Indus., Inc. v. Simon-Hartley, Ltd.,*
   91 F.3d 762 (5th Cir. 1996) ..............................................................61

*Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec. Supply Inc.,*
   106 F.3d 894 (9th Cir. 1997) ............................................................55

*Zimmerman v. City of Austin, Texas,*
   881 F.3d 378 (5th Cir. 2018) ............................................................61

## Statutes

15 U.S.C. § 1114.............................................................1, 48, 49, 55, 62

15 U.S.C. § 1117..................................................................13, 49, 60

15 U.S.C. § 1121 ...................................................................................1

15 U.S.C. § 1125 ............................................................................1, 62

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

**Other Authorities**

Fed. R. App. P. 4(a)(3) ..........................................................................1

Fed. R. Civ. P. 54(d)(2) .........................................................................2

6 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 31:12 (4th
ed. 2001) ................................................................................56, 58

http://en.wikipedia.org/wiki/Barn_find ................................................3

http://en.wikipedia.org/wiki/Conservation_and_restoration_of_road_v
ehicles ............................................................................................4

# JURISDICTIONAL STATEMENT

Plaintiff-Appellant/Cross-Appellee Rolex Watch U.S.A., Inc. ("Rolex") brought claims against Defendants-Appellees/Cross-Appellants BeckerTime LLC and Matthew Becker (collectively "BeckerTime") for trademark infringement and counterfeiting under 15 U.S.C. § 1114, and for unfair competition under 15 U.S.C. § 1125. ROA.22-37. The District Court had jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331.

Rolex filed a notice of appeal on September 8, 2022. ROA.2424. BeckerTime timely filed a notice of cross-appeal on September 21, 2022, pursuant to Fed. R. App. P. 4(a)(3). ROA.2459. BeckerTime's cross-appeal is from a Final Judgment by the District Court, entered on August 12, 2022, that disposed of all claims by Rolex and which incorporated the prior Memorandum Opinion & Order, entered January 31, 2022. ROA.2274-2280. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.  Did the District Court Err By Failing to Address the U.S. Supreme Court's *Champion* Framework, and its Progeny, Which Require a Focus on Full Disclosures for Analyzing Infringement Claims Involving Solely Repaired, Refurbished and Customized Decades' Old, Vintage Rolex Watches?

II. Assuming the District Court Did Not Err in Applying Only the Traditional Likelihood of Confusion Factors, Did the District Court Properly Exercise its Discretion in Applying the Principles of Equity to Adopt a Specifically-Tailored Permanent Injunction?

III. Assuming the District Court Did Not Err in Applying Only the Traditional Likelihood of Confusion Factors, Did the District Court Correctly Hold That the Facts Adduced at Trial Supported a Finding That BeckerTime Did Not Engage in Deliberate Infringement, and Thus Did Not Abuse its Discretion in Barring Any Monetary Recovery by Rolex?

   a. Did the District Court Property Exercise its Discretion in Finding That BeckerTime Did Not Act in Bad Faith or With Wrongful Intent?

   b. Did the District Court Properly Exercise its Discretion to Refuse to Award Any Equitable Disgorgement Remedy to Rolex under the Laches Doctrine as a Result of Rolex's Delay in Bringing its Claims?

   c. Did the District Court Properly Exercise its Discretion to Refuse to Award Rolex Treble Damages, and is Rolex Estopped From Seeking Such a Remedy Based on Its Stipulation to Purely Equitable Relief at Trial?

   d. Did the District Court Properly Exercise its Discretion to Refuse to Award Rolex Any Attorneys' Fees, and Did Rolex Waive Such Relief By Failing to File a Motion Under Fed. R. Civ. P. 54(d)(2) in the District Court Below?

# STATEMENT OF THE CASE

This case involves the scope of what an owner of a **<u>vintage</u>** Rolex watch is permitted to do to that watch while retaining the Rolex marks. All of the watches at issue here are 20, 30, 40, and even 60 years old and older used Rolex watches. ROA.2977ll14-17 ("our bread and butter is going to be between 40 and 60 years old . . . . we also work on watches that are going to be 20 years, 30 years [old]"). Rolex's theory, both below and here on appeal, is that if **<u>any parts</u>** of a vintage Rolex watch are replaced with aftermarket parts, if any of the original patina of the vintage Rolex watch is changed, or if a watch owner deigns to customize the vintage watch without Rolex's approval, the watch can no longer be called a Rolex **<u>even</u>** if all of those changes are fully disclosed. Indeed, according to Rolex, such a watch would be a "counterfeit." Rolex's Opening Brief at 7-14 ("Br."). The analogy presented at trial is apt:

> Imagine you purchase a stock 1970's Chevy Camaro that shows its 50-year age. Let's call it a "barn find,"[1] and that you take it to your favorite restoration shop. The engine needs to be rebuilt, the frame needs to be straightened, the body needs to be repaired and the paint sanded down to bare metal. But instead of restoring the vehicle to exact original specifications, you have the shop replace the big block V8 with a modern fuel-injected engine with a supercharger. And instead of the original paint color from Chevrolet, you ask for a modern metallic paint scheme. And, along the way, the shop replaces the windshield that was

---

[1] A "barn find" is "a classic car, aircraft or motorcycle that has been rediscovered after being stored, often in derelict condition." http://en.wikipedia.org/wiki/Barn_find (lasted visited Jan. 12, 2023).

hazy and pitted with an aftermarket one, and the chrome parts are painted with a satin black finish.  You even have the shop add SS-badging (even though the car originally was not an SS model).

ROA.2858.  Rolex's theory would require all the Chevy-branding, including that SS-moniker, to be removed even though the car is over 50 years old, and even if all of these modifications are fully disclosed and the car is described as a resto-mod.[2]

Rolex conceives of a definition of an "Altered Watch" that it uses interchangeably with the premise of that watch being a "counterfeit," and applies that definition to **any Rolex watch that has non-genuine parts added to it**, no matter how old, and no matter how exacting and truthful the disclosures.  ROA.26, 2483-2486; Br. at 7-8.  As argued below, the seminal Supreme Court law on restored and customized goods does not permit such an approach.

BeckerTime began in 1998 as the passion of father-son watch enthusiasts, and slowly developed into one of the premier online distributors of luxury pre-owned watches.  ROA.2993.  As relevant here, BeckerTime's business consists of reselling vintage Rolex watches, and making repairs to and selling refurbished and/or customized used Rolex watches.  It is undisputed that all of the used Rolex watches BeckerTime sells and offers for sale (i) are decades' old (vintage), used Rolex

---

[2] *See* http://en.wikipedia.org/wiki/Conservation_and_restoration_of_road_vehicles ("Resto-modification, also known as resto-modding, is when 'an old car [is] modernize[d] with an updated engine, suspension, brakes, tires and[/or] electronics.'" (internal citations omitted)) (lasted visited Jan. 12, 2023).

watches, (ii) contained – at the very least – a genuine Rolex movement and a genuine Rolex case, and (iii) were accompanied by disclosures that the watches were used, and to the extent relevant, the nature of any aftermarket parts and refurbishments that had been made, including details as to any aftermarket bezels, bezel inserts, crystals, diamonds, and watch bands, as well as to any refinishing of the genuine Rolex dials in those watches.    ROA.2976ll.15-2978ll.3, 2987ll.20-2988ll.11, 2991ll.8-3003.ll1.  BeckerTime always discloses in its product descriptions, in its Certificate of Authenticity, and in its communications with customers what modifications or customizations it undertakes on its watches.  *Id.*; *see* ROA.16529-16530, 16543, 16546, 16583-16585, 16608, 16626-16627, 16629.  At trial below, the evidence was undisputed that to the extent any potential customer had inquiries regarding the genuineness of the products, BeckerTime went to painstaking efforts to be as informative and transparent as possible about the characteristics of each watch if offered for sale.  *Id.*; ROA.3456-3586.

This lawsuit is part of a nationwide campaign by Rolex to suffocate the aftermarket in used Rolex watch sales.  Not in new or slight used watches, but in **decades' old watches** that are not subject to any original warranty or sales service agreement.  ROA.2977ll.18-25 ("Does BeckerTime sell or service any Rolex watches that fall under any Rolex watch service agreement or warranty? We do not"); *cf.* Br. at 6-7.  Indeed, the only two watches Rolex purchased from

BeckerTime and admitted into evidence were both no less than **40 years old** at the time of trial.  ROA.1486 (Watch One was manufactured sometime between 1970 and 1982); ROA.1489 (Watch Two was manufactured in or around 1972).

Watch One was advertised and disclosed by BeckerTime as a "Pre-owned" watch containing a Rolex movement and case, and a silver dial that had been refinished with "10 custom added genuine diamonds and rubies."  BeckerTime further advertised and disclosed Watch One as having a "bezel is not made by Rolex. It is a custom made aftermarket bezel . . . with genuine round brilliant diamonds and four (4) rubies bead set in 18k yellow gold."  ROA.750-767, 1492-1509, 13795-13812, 16047-16064.

Watch Two, at nearly **50 years old**, was advertised and disclosed by BeckerTime as a "Pre-owned" watch containing a Rolex movement and case, and containing an "Aftermarket Acrylic Crystal" and a silver dial that had been refinished with "10 custom added round brilliant diamonds."  BeckerTime further advertised and disclosed Watch Two as having a "bezel is not made by Rolex. It is a custom made aftermarket bezel . . . with round brilliant diamonds . . . set in stainless steel."  ROA.1504, 1514-1528, 13820-13822.

Rolex harps on irrelevant suppositions such as how its marks are strong and how many millions of dollars it spends on advertising its *new* watches, Br. at 4-6,

but of course omits that ***Rolex*** does not sell used Rolex watches. ROA.2161.[3] And

Rolex omits that BeckerTime does not sell new or even slightly used Rolex watches.

After full discovery in this case, and ahead of the then-pending jury trial,

Rolex made the following stipulations to the District Court: (1) that Rolex "has

limited its claims for monetary relief at trial to the disgorgement of Defendants'

profits, which is an equitable remedy"; and (2) that Rolex's "claim for injunctive

relief is also an equitable remedy." ROA.1108-1109. No other equitable claims or

legal bases for relief were included by Rolex in that stipulation. *Id.* Rolex expressly

submitted that "because [it] seeks only equitable relief at trial, the Parties have

agreed that any trial in this matter should be tried to the Court without a jury." *Id.*

After a two-day bench trial, the District Court held that BeckerTime was liable

for trademark infringement and counterfeiting. First, while conceding that

BeckerTime's "product descriptions on [its] website and eBay listings indicate that

the replacement parts are not genuine Rolex parts, that BeckerTime is not affiliated

---

[3] Nor is this case about whether "non-genuine parts can affect the performance" of the Rolex watch, such as "its water-resistance and ability to keep accurate time," Br. at 7, as there was no evidence presented at trial that a decades' old Rolex watch – even with *no* aftermarket parts – would perform "as new" or would have maintained water-resistance and timekeeping capabilities. Even Rolex was unable to guarantee many vintage Rolex watches were waterproof because "some were never made to be pressure proof[,]" or were "out of production for many years" and "limited parts [were] available." ROA.2598.ll8-2602.ll23. Moreover, BeckerTime **never** sold its watches as performing "as new," and made clear that only its **own** warranties applied to the condition of the watch. ROA.16535-16536, 16581, 16608, 16626-16629.

with Rolex, that the alterations will void [any] Rolex warranty," and that "[m]ost customers, at a minimum, read the product descriptions," *cf.* Br. at 13, the District Court concluded that some of the disclosures that accompanied BeckerTime's customized watches were "not fully accurate" and that customer confusion was present as to the nature of the watches because "[s]ome customers do not fully understand or fully read the [watch] descriptions." ROA.2161. The District Court also found confusion because "[o]ther customers have inquired [of BeckerTime] as to the authenticity, asking for further specifications and stating they are confused as to whether the watch is fully genuine Rolex." *Id.* Notably, the Court found that in every instance a customer or potential customer inquired as to a particular watch, "BeckerTime provides further product descriptions and reiterates that Rolex will no longer service the watches in question." ROA.2162. The District Court specifically found the evidence demonstrated no bad faith and that BeckerTime's conduct was not intentionally misleading as to any of the watches. ROA.2170, 2161.

Second, the District Court held the evidence at trial demonstrated Rolex had been aware of BeckerTime's customization of used Rolex watches for well over a decade prior to the Complaint, and that Rolex failed to act despite this awareness. Under its equitable powers, the District Court found the laches doctrine should bar Rolex's request for equitable disgorgement. ROA.2170. That trial evidence on laches included, among other things:

- <u>November 2009</u>: Tracy Olivares, representing herself as being with "Rolex Corporate," placed a bid on a watch from BeckerTime on eBay. During the email conversations with Mr. Becker, Ms. Olivares stated: "Yes I spoke to our technician today. We would like to look up this model in our database to make sure. Can you please provide me with the serial and model number, **and if it is only the dial and bezel that have been customized. If interior is also customized, then it is imperative that i know as well**." As the District Court found, "[i]n responding to her email, Matthew Becker cited the description of the watch, which described the diamonds as aftermarket." ROA.3022ll.2-3024ll.2, 3286.

- <u>March 29, 2010</u>: Rolex's counsel consented for entry of a BeckerTime modified Rolex watch into the U.S. On the accompanying commercial invoice in Rolex's counsel's possession, it stated in the "**FULL DESCRIPTION OF GOODS**" section: "Automatic. **with 10 diamonds custom made by Beckertime**." ROA.2895ll.14-2896ll.14, 3335.

- <u>March 10, 2011</u>: Rolex's counsel provided consent for entry of another BeckerTime modified Rolex watch into the U.S. The commercial invoice and related eBay documents in Rolex's counsel's possession stated, among other things, the dial was refinished and the watch band was aftermarket. ROA.2896ll.15-2897ll.21, 3331.

- <u>August 31, 2012</u>: Rolex's counsel's paralegal, who testified at trial, admitted in an internal email that she was suspicious of BeckerTime's business, noting BeckerTime **was another business that they "wondered about**." ROA.2884ll.7-2886ll.12, 3288.

- <u>April 3, 2013</u>: Rolex's counsel's paralegal, in an internal email, noting she had intercepted a watch that was supposed to go to BeckerTime – "**Wow. Oh no! Might be a too bad** . . . . **Becker will not be getting this one!**" That watch's eBay description, which was in the paralegal's possession, included a description of the modifications and customizations. ROA.2876ll.13-2877ll.23, 3290.

- <u>November 7, 2013</u>: Rolex's counsel's paralegal, in an internal email, discussing yet another BeckerTime watch as "**more junk from BeckerTime**." ROA.2877ll.24-2879ll25, 3292.

The District Court held that "[s]ince at least 2006, the law firm of Gibney Anthony & Flaherty[4] ("GAF") has been Rolex's counsel," "[t]heir responsibilities include trademark enforcement throughout the United States," and "[a]t a minimum, since 2010, GAF has been aware of BeckerTime." ROA.2163. "This awareness included knowledge of shipments to BeckerTime of used Rolex watches" that had the same (or similar) "modifications and customizations" that are at issue in this dispute. *Id.* Indeed, Rolex's only "defense" to its awareness of BeckerTime's business practices was to have its counsel's paralegal disclaim any responsibility for reading the pages of materials that were included in the import notifications in front of her and her law firm during all those years. ROA.2169. The District Court found such a manufactured, post-hoc reasoning by Rolex was "not credible." *Id.* & n.3.

Nevertheless, because the District Court found there was infringement (and counterfeiting) under the traditional digits of confusion, it held that a permanent injunction would be appropriate, and after further briefing by the parties on the parameters of such an injunction, the Court entered a permanent injunction along with its Final Judgment. ROA. ROA.2172, 2274-2280.

---

[4] This same firm is one of the slew of counsel of record both below and on appeal here, including as **Rolex's counsel and witness** (vis-à-vis its paralegal) at trial. *See supra* Certificate of Interested Persons (listing counsel at GAF).

## SUMMARY OF THE ARGUMENT

This case is about the repair, customization, and sale of **decades' old** (*i.e.*, vintage) Rolex watches by BeckerTime. The vintage watches at issue are not counterfeit watches in the colloquial sense, but rather **genuine** Rolex watches with **genuine** Rolex cases and **genuine** Rolex movements. BeckerTime restored and sold some of these watches with refurbished and repainted dials. BeckerTime customized and sold some of these watches with added gemstones on the dial or on the bezel. But at all times, BeckerTime fully disclosed the repairs, refurbishments, and customizations it made to its customers. The District Court, however, failed to recognize that courts throughout the country apply a modified test arising from the Supreme Court decision in *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947) and its progeny, which mandates that **full disclosure gives the manufacturer all the protection to which it is entitled** when such products continue to bear its trademarks.

The District Court ignored that BeckerTime's watches were always described as refurbished or customized, and that its customers understood the nature of the changes and refurbishing work. And to the extent those disclosures were inadequate, the proper solution was to impose any necessary changes to those disclosures in order to achieve the "full disclosures" required under the *Champion* framework. Instead, the District Court's error places Rolex in a unique position to control and

object to the resale of vintage watches containing any non-Rolex parts **for eternity**. This is the District Court's legal error.

In the alternative, if the District Court did not err in finding infringement, the specifically-tailored injunction it imposed properly balances the facts and the equitable principles at stake in this case. Rolex's reliance on clearly distinguishable, decades' old cases does not demonstrate an abuse of discretion by the District Court. Contrary to Rolex's assertions, the District Court found that BeckerTime did not act in bad faith or with a deliberate intent to infringe on Rolex's marks, a finding that is well-supported by the trial evidence. Likewise, the District Court's tailoring of the injunction addressed the only potential for confusion it found (might) exist with respect to BeckerTime's advertising of the refurbished and customized vintage watches. And, the injunction does not, contrary to Rolex's arguments, continue to permit the sale of "counterfeit" watches.

Nor did the District Court abuse its discretion in balancing the equities of this case to find that a specifically-tailored injunction was sufficient on its own to protect Rolex's trademark interests and that no monetary relief was appropriate. Indeed, the District Court correctly held that the laches doctrine barred any disgorgement remedy because Rolex was aware of and ignored BeckerTime's customization of the vintage Rolex watches for well over a decade.

Furthermore, because Rolex expressly waived its right for any trebling of damages, and because Rolex failed to move for its attorneys' fees in the District Court below, these arguments are not properly before this Court.  And, even if these arguments were not waived, because the evidence did not support the conclusion that BeckerTime acted with deliberate intent or bad faith, this case is not "exceptional" under 15 U.S.C. § 1117(a) and such additional monetary relief is not appropriate.

**ARGUMENT**

I. **The District Court Erred By Failing to Apply the Correct Factors and Legal Principles Applicable to Refurbished and Customized Used (Vintage) Products Bearing a Manufacturer's Trademark**

    A. **Standard of Review**

Although a district court's application of the traditional likelihood of confusion factors is typically a question of fact reviewed for clear error, that "standard of review does not insulate factual findings premised upon an erroneous view of controlling legal principles." *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 196 (5th Cir. 1998) (citing *Johnson v. Hospital Corp. of Am.*, 95 F.3d 383, 395 (5th Cir. 1996)). When a likelihood-of-confusion factual finding, is "'inextricably bound up' in, or infected by, a district court's erroneous view of the law," as here, this Court conducts "a *de novo* review of the fully-developed record." *Id.*

Not only did the District Court overlook the indisputable fact that this case involved **only** the repair, customization, and sale of **decades' old** Rolex watches by BeckerTime, **none of which were ever passed off or sold as** "**new**," the District Court failed to recognize that courts in this Circuit and throughout the country apply a modified test to such products that bear the manufacturer's trademarks arising from the U.S. Supreme Court's seminal decision in *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947). Indeed, the *Champion* decision has been universally understood to hold that – in the context of the sale of repaired or refurbished goods – "'**[f]ull disclosure' of the identity of the restorer and the used nature of the**

**product protects the seller of second-hand goods from liability for a claim of trademark infringement**." *Hamilton Int'l Ltd. v. Vortic LLC*, 13 F.4th 264, 270 (2d Cir. 2021) (emphasis added). Because the District Court did not address or apply the *Champion* framework, neither at the summary judgment stage nor after trial, *see* ROA.2157-2172, 2274-2280, its holding that Rolex met its burden to show BeckerTime's conduct created a likelihood of confusion sufficient for a finding of infringement (and counterfeiting) is reviewed *de novo* by this Court. *E.g.*, *Nitro Leisure Prod., L.L.C. v. Acushnet Co.*, 341 F.3d 1356, 1363 (Fed. Cir. 2003) ("[T]he tests applied to assess likelihood of confusion by courts will not necessarily be the same when determining trademark infringement in the resale of altered new goods and when considering trademark infringement in the resale of used and refurbished goods."); *see Proactive Env't Prod. Int'l, LLC v. Pine Env't Servs., LLC*, 2021 WL 3025481, at *11 (M.D. Fla. May 20, 2021) ("Plaintiffs' effort to compare [defendant's] rental business to the sale of 'counterfeit' goods is similarly without merit. In the 'counterfeit' cases relied upon by the Plaintiffs, the repaired or used nature of the products was not at issue—rather, the defendants in those actions were attempting to pass off a fake product as a new one.").

B.   ***Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947)**

Over seventy years ago, the Supreme Court first recognized that resellers of used and refurbished goods bearing the trademark of the original manufacturer must

be treated differently in any infringement analysis. In that case, the defendant obtained used Champion-branded spark plugs, repaired and reconditioned them, and then resold them to the public. The refurbished spark plugs had "Champion" as well as the letters and symbols denoting the model of the plug stamped on the plug itself, and were sold by that defendant as "Renewed." *Champion*, 331 U.S. at 126. Though the trial court found that the defendant's conduct constituted trademark infringement, the Supreme Court faulted its approach, noting any proper analysis must "put to one side the case of a manufacturer or distributor who markets new or used spark plugs of one make under the trade mark of another." *Id.* at 128. That scenario is the quintessential trademark infringement case, and not what was presented in *Champion*, nor what was before the District Court here.

Critically, the Supreme Court provided a useful analogy in *Champion*:

We are dealing here with second-hand goods. The spark plugs, though used, are nevertheless Champion plugs and not those of another make. There is evidence to support what one would suspect, that a used spark plug which has been repaired or reconditioned does not measure up to the specifications of a new one. **But the same would be true of a second-hand Ford or Chevrolet car. And we would not suppose that one could be enjoined from selling a car whose valves had been reground and whose piston rings had been replaced unless he removed the name Ford or Chevrolet**.

*Id.* at 128-29 (emphasis added). The Court determined that the refurbisher's use of the "Champion" logo would not mislead consumers because "inferiority is expected in most second-hand articles," and any "[i]nferiority is immaterial so long as the

article is clearly and distinctively sold as repaired or reconditioned rather than as new." *Id.* at 129-30 (noting that it "is wholly permissible" for a second-hand dealer to obtain an advantage from a trademark "so long as the manufacturer is not identified with the inferior qualities of the product resulting from wear and tear or the reconditioning by the dealer").  Thus, and fundamentally, in the context of used, refurbished goods, as here, the Supreme Court held:

> **Full disclosure gives the manufacturer all the protection to which he is entitled**.

*Id.* at 130 (emphasis added).

### C. The District Court Improperly Applied the Traditional Confusion Factors Without Any Ancillary Analysis Required Under the *Champion* Framework

Despite BeckerTime's repeated efforts to raise the *Champion* framework, the District Court relied **entirely** on the "less relevant" traditional confusion factors. ROA.2161-2162, 2165-2169.  Consequently, the District Court reached a ruling that places Rolex in a unique position – it can object to an owner's use of any non-Rolex parts in the repair of that watch, object to the customization of that watch, and object to the resale of such a repaired or customized watch **for eternity**.  *Champion*'s own automobile analogy demonstrates the perverse result here: a resto-mod Rolex watch is unlawful no matter how old it is and no matter the lengths to which BeckerTime goes to disclose the refurbishment and customization of the underlying watch to its customers.  331 U.S. at 128-29; *cf. supra* at 5.

The District Court applied only the traditional factors used by this Circuit in determining whether a likelihood of confusion exists, which are: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). But these factors are insufficient on their own to balance Rolex's trademark rights with the rights of an owner (such as BeckerTime) of a used (here, **vintage**) watch in repairing and customizing that watch without having to remove the underlying Rolex marks. *See, e.g. Vortic*, 13 F.4th at 277 (approving of district court determination that in the context of the sale of **used**, **customized** trademarked goods, the traditional confusion factors "were less relevant"); *Nitro Leisure Prod.*, 341 F.3d at 1365 (approving district court's refusal to be governed by traditional factors for refurbished golf ball sales and found it "correctly looked to *Champion* for the applicable legal standard").

The District Court application of the traditional confusion factors in isolation – without acknowledgment of the overriding fact that this case involves *used* trademarked watches that are serviced and customized with full disclosure of any non-Rolex parts – is erroneous and allows Rolex to improperly control the market in the repair and customization of its watches after manufacture and sale **forever**.

### 1.    Factors One and Two are Indisputably Irrelevant

BeckerTime never disputed that Rolex owns strong marks, and that the vintage Rolex watches BeckerTime sells retain Rolex's marks.  But how are these factors even relevant to the analysis of where to draw the line for the **repair** and **customization** of **authentic** Rolex watches?  *See, e.g.*, *Brandtjen & Kluge, Inc. v. Prudhomme*, 765 F. Supp. 1551, 1567 (N.D. Tex. 1991) (where "[t]he essence of [the] action is that the rebuilder is selling under the manufacturer's trademark a rebuilt product of the manufacturer's original making," "[d]igits one and two offer little guidance"); *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, 2009 WL 3075205, at *9 (N.D. Tex. Sept. 25, 2009) (same); *Neles-Jamesbury, Inc. v. Valve Dynamics, Inc.*, 974 F. Supp. 964, 971 (S.D. Tex. 1997) ("similarity of design between the parties' trademarks, like the strength of Plaintiff's trademark, is not a disputed, or relevant, consideration in the case at bar"); *see also Vortic*, 13 F.4th at 278 ("District Court properly concluded that the 'similarity of the marks' factor did not support a finding of confusion given the context in which the mark appeared."); *U.S. Surgical Corp. v. Orris, Inc.*, 5 F. Supp. 2d 1201, 1209 (D. Kan. 1998) (same).  They are not.  And the District Court's imposition of a "presumption of confusion" based on these factors underscores just how erroneous it was for the court to ignore the *Champion* framework.  ROA.2167-2168 (improperly holding that "[w]hen a defendant uses a plaintiff's exact marks . . . courts within this Circuit have

determined that a thorough analysis of the digits of confusion is unnecessary, and a presumption of confusion exists").

>
> **2.** **Factor Three: Rolex Did Not Meet its Burden to Show a Relevant Similarity in Products as BeckerTime Deals Exclusively in Vintage Watches**

Nor is the fact that Rolex and BeckerTime both sell Rolex watches the appropriate level of abstraction at which to establish a similarity in goods. Indeed, Rolex has conceded at all times that it deals exclusively in the manufacturing and sale, through authorized retailers, of **only new watches**. ROA.2161. BeckerTime **does not advertise, sell**, or **service new Rolex watches**, or even lightly used Rolex watches. *Id.* (District Court finding "[w]hile Rolex deals exclusively in new watches, BeckerTime does not sell new or even lightly used watches.").

Rather, the evidence demonstrated that BeckerTime **only** sells, services, and customizes **vintage** Rolex watches that are at least twenty, thirty, or forty years old, or even older. *Supra* at 4-6. BeckerTime never advertises such watches as "new"; to the contrary, BeckerTime always clearly advertises its watches as pre-owned, refurbished or customized decades' old Rolex watches. *Id.* As in *Vortic*, Rolex put forth no evidence that a customer seeking a **new** Rolex watch would view a **decades' old Rolex watch** from BeckerTime as "similar."[5] *Hamilton Int'l Ltd. v. Vortic LLC*,

---

[5] Turning back to the automobile analogy, this is tantamount to finding a 1963 Chevy Corvette (restored or otherwise) is a similar product to a 2022 Chevy Corvette.

486 F. Supp. 3d 657, 666 (S.D.N.Y. 2020) (noting that "similarity is not assessed in a vacuum" and "the presence of disclosure from both advertisements and the watch itself would be critical to assessing the overall impression"), *aff'd* 13 F.4th 264 (2d Cir. 2021). Indeed, Rolex failed to submit a single survey demonstrating any overlap in the new and used Rolex markets. It relied purely on its *ipse dixit* testimony from its employees.

### 3. Factor Four: There is No Relevant Identity in Retail Outlets and Purchasers

Though the District Court found that "Rolex sells its new watches exclusively through [authorized retailers] while BeckerTime sells its watches exclusively online, there is not a brick-and-mortar store."), ROA.2161, Rolex nonetheless argues that there is identity in the relevant purchasing public because the parties "clearly target the same class of purchasers – consumers of high end, luxury watches." *E.g.*, ROA.1558. But again, Rolex never demonstrated this to be true at trial, nor does it automatically follow that a consumer interested in a used Rolex watch would necessarily consider a new Rolex watch. *E.g.*, *Vortic*, 486 F. Supp. 3d at 666 ("Plaintiff argues that the market for its products and Lancaster are the same because they both sell watches. But presumably there is substantial variation within the watch market."). There was no evidence (no survey evidence or any customer testimony) that those who purchase new Rolex watches would typically consider buying a decades' old Rolex watch instead. *Cf. Brandtjen & Kluge*, 765 F. Supp. at

1568 (rejecting notion of identity of purchasers where "[t]he purchasers of both products are printers, but the record does not disclose whether those who purchase newer KLUGE brand presses typically buy rebuilt pre–1960 KLUGE machines as well"); *Neles-Jamesbury*, 974 F. Supp. at 972 (rejecting that this factor weighed in favor of plaintiff where "[o]ther than the parties' own descriptions of the state of the valve market . . . the record does not contain sufficient evidence").

**4.  Factor Five: There is No Relevant Identity in the Advertising Media**

Fundamentally, at trial Rolex provided nothing more than anecdotal evidence that BeckerTime benefits from Rolex's purported hundreds of millions of dollars in media advertising.  Yet this would be true of **<u>any</u> <u>reseller</u> <u>of</u> <u>used</u> <u>products</u>** bearing a trademark – true for used cars, true for used smartphones, true for used appliances, and true for any product that retains a useful life and is not discarded.  *See, e.g.*, *Champion*, 331 U.S. at 130 (Supreme Court recognizing a second-hand dealer is permitted some advantage from the trademark; this windfall is "wholly permissible so long as the manufacturer is not identified with the inferior qualities of the product"); *Brandtjen & Kluge, Inc.*, 765 F. Supp. at 1568 ("the evidence does not reflect that [Plaintiff] advertises in a similar medium").  For the District Court to find this factor relevant in the absence of a *Champion* framework analysis is not only error under a *de novo* standard, it is *clear error*.  *Cf.* ROA.2161 (finding "BeckerTime benefits from [Rolex's] advertising and brand recognition").

### 5. Factor Six: There is No Evidence Showing BeckerTime's Intent to Confuse

The testimony and the evidence at trial, including the litany of disclosures that BeckerTime makes at all stages of its communications with customers, beginning in how it advertises the vintage Rolex watches that are available through its various third-party websites and on its own internet pages, continuing through its communications with its prospective clients that have emailed or otherwise inquired about a particular watch, and BeckerTime's disclosures before, during and at the time of purchase, all demonstrated no intent to confuse its customers as to the auspices of the vintage, customized or repaired Rolex watches it sells.

Though not addressed by the District Court, in the *Champion* framework this factor is the *sine qua non* of the proper analysis for used and refurbished goods. It follows that a reseller of vintage, customized or refurbished watches, like BeckerTime here, that strives to make full disclosures, would have no intent to deceive customers. *Cf. Brandtjen & Kluge*, 765 F. Supp. at 1568-69 (finding defendant's advertising "does not manifest an intent to deceive typical purchasers. The advertisement[s] depicted [the goods] . . . typical of others in the record . . . [and] discloses in several ways that [defendant] is an independent rebuilder . . . [and the goods] are described as 'Completely Rebuilt'"); *see supra* at 15-17 (discussing *Champion*, 331 U.S. at 130 (holding nature of disclosures is paramount in analysis of refurbished goods bearing the manufacturer's marks)).

On this factor, the District Court correctly held that there was insufficient evidence that BeckerTime intended to confuse customers. ROA.2161 ("[T]here is insufficient evidence to show intent to infringe on Rolex's trademarks. This is particularly true in light of the disclosers BeckerTime made to customers.").

### 6. Factor Seven: The Only Customer Communications Admitted at Trial Actually Show Full Disclosure by BeckerTime

After trial, the District Court concluded that "[t]here is some level of actual confusion exhibited by BeckerTime's customers regarding the authenticity of BeckerTime's watches . . . . Some customers do not fully understand or fully read the description. Other customers have inquired as to the authenticity, asking for further specifications and stating they are confused as to whether the watch is fully genuine Rolex." ROA.2161. But what the District Court omitted from this analysis is that in **every** instance, BeckerTime's communications – in the secrecy of emails that were not sent with any eye towards this litigation brought by Rolex years later – **were** **always** **truthful**, assuaged any "confusion," and strived to make sure every customer was fully informed as to the details of the watches offered for sale. *Cf.* ROA.3456-3586.[6] These handful of email communications, the sum total of the

---

[6] At all times BeckerTime has been open to *different* or *more* disclosures to assuage any concerns as to confusion while allowing it to operate as a refurbisher and customizer of used Rolex watches under the rights guaranteed by *Champion* and its progeny. *Cf.* ROA.1882. Indeed, many of the disclosures and statements that the

documentary evidence Rolex relied upon to show "confusion" despite well over **ten thousand transactions** by BeckerTime with its customers in just the years since 2016, do not weigh in favor of infringement, particularly where such confusion must be balanced against the backdrop of "full disclosure" under the *Champion* framework. *Id.*; *Codename Enters., Inc. v. Fremantlemedia N.A., Inc.*, 2018 WL 3407709, at *6 (S.D.N.Y. Jan. 12, 2018) (probative evidence of confusion must go to purchasing decisions, and not due to carelessness or inattentiveness of the consumer and discounting twenty-four cited instances of actual confusion as *de minimus* when taken in context to the defendant's overall business). This balancing the District Court did not do.

As the *Vortic* court (and *Champion*) correctly held, full disclosure to consumers, whether in advertisements or marketing materials or in follow-up communications, vitiates any actionable confusion. *Vortic*, 13 F.4th at 276 ("District Court properly weighed Vortic's full disclosure heavily in its consumer confusion analysis"); *Vortic*, 486 F. Supp. 3d at 664-68; *Nitro Leisure Prod.*, 341 F.3d at 1361. Rolex submitted **no** evidence (expert, consumer survey, or otherwise) other than the *ipse dixit* testimony of its own employees that the wording of BeckerTime's disclosures (on its website, its emails, and elsewhere) were inadequate and likely to

---

District Court found "infringing" had been removed from BeckerTime's advertisements long before trial. *E.g.*, ROA.2990ll.6-2991ll.7.

cause confusion. Nor did Rolex offer any evidence of post-sale confusion, yet somehow the District Court was able to extrapolate a theory of the same, again without any reference to the appropriate balancing under *Champion*. *Cf.* ROA.2167-2169. As this Court has noted, "[t]he paradigmatic post-sale confusion case arises when a consumer knowingly purchases a counterfeit of a luxury item—a designer handbag, for example." *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 814 (5th Cir. 2019) (collecting cases). But that is simply not the situation here. Each and every watch BeckerTime sells and services is not a "knockoff" or a paradigmatic "counterfeit" copy of a luxury Rolex, but rather every one is a repaired, refurbished or customized vintage Rolex watch, and it is advertised and sold as such by BeckerTime. *Supra* at 4-6.

Having proceeded without recognizing this case as falling squarely under *Champion*, the District Court's conclusion on and application of this factor to the likelihood of confusion analysis is erroneous.

### 7. Factor Eight: Buyers of Rolex Watches, Whether New or Used, are Sophisticated and Can Be Expected to Exercise Care

On this final traditional factor, the District Court simultaneous concluded that "Rolex purchasers are very sophisticated," but in the same breath found that "BeckerTime's customers are not as sophisticated as Rolex customers, but are not unsophisticated." ROA.2162. On what **evidence** the court below relied upon to

make such a paradoxical conclusion, however, is unclear. Rolex conceded that consumers of its new watches, costing well over $25,000 in most cases, are sophisticated. ROA.1567-1568.

Yet, "it is significant that the [BeckerTime] products involved in this case are not low price" and the "typical purchaser does not buy on impulse or without some extended consideration." *Brandtjen & Kluge*, 765 F. Supp. at 1571. The email evidence that Rolex and the District Court relied upon to manufacture the appearance of confusion actually demonstrates that BeckerTime's customers are sophisticated; they **inquired** about the specific details of the vintage watches available for sale, their condition, the refinishing and refurbishment process, and various other details that would be expected for the purchase of a used watch that typically costs several thousand dollars. *E.g.*, ROA.3483-3484, 3489-3490, 3538-3540, 3541-3542, 3544-3545, 3547-3550, 3581-3583.

*          *          *

At bottom, even a cursory review of the traditional confusion factors demonstrates the error in the District Court's failure to acknowledge, let alone apply, the *Champion* framework.

### D.    The Proper Application of the *Champion* Framework

It was undisputed at trial that BeckerTime sells, repairs, and customizes **vintage** genuine Rolex watches; it does **not** sell new (or even nearly new) Rolex

watches.  ROA.2161.  And, in that vein, "resellers [such as BeckerTime here] are permitted to use a trademark on their products to honestly identify them as being, **or including**, the product to which the trademark belongs."  *Farouk Sys. Inc. v. Target Corp.*, 2008 WL 181130, at *3 (5th Cir. Jan. 22, 2008) (emphasis added); *see generally Champion Spark Plug Co. v. Sanders*, 156 F.2d 488, 491-92 (2d Cir. 1946), *aff'd*, 331 U.S. 125 (1947) ("It is well settled by the authorities that the defendants have a right to sell an article manufactured by the plaintiff and to say that it has been so manufactured by retaining the latter's trademark and style numbers to indicate the origin of the goods.  If the article the defendants have sold was second-hand and they repaired it they could still retain the marks on the goods if they gave the public clearly to understand that the goods were not simply those of the original manufacturer but had been repaired by themselves. They have only to tell the truth, and the whole truth, and to tell it plainly.").

Despite BeckerTime briefing the *Champion* framework, the *Vortic* case, as well as a prescient case three decades earlier from this circuit, *Brandtjen & Kluge*, 765 F. Supp. 1551 (N.D. Tex. 1991), both at the summary judgment stage, ROA.1554-1574, and again in its trial brief, ROA.1883-1897, the District Court **never addressed** the notion that the proper analysis of this dispute fell outside a mechanical application of the traditional likelihood of confusion factors. *Vortic*, 13 F.4th at 272 (holding that "application of the[] non-exhaustive [confusion] factors is

not a 'mechanical process,' and 'depending on the complexity of the issues, the court may have to take still other variables into account'").

Cases that have properly addressed the repair and refurbishment of trademarked products have held that, consonant with *Champion*, disclosures are the **primary** **factor** in determining whether there is any actionable claim under the Lanham Act. *E.g.*, *Vortic*, 13 F.4th at 273; *Nitro Leisure Prod.*, 341 F.3d at 1361. In this Circuit, trial courts have found that when the defendant "sells a rebuilt or reconditioned product that retains the trademark of the original manufacturer," the Supreme Court's decision in *Champion* requires the analysis to focus on "[i] the extent and nature of changes made to the product; [ii] the clarity and distinctiveness of the labeling on the rebuilt product; and [iii] the degree to which any inferior qualities associated with the reconditioned product would likely be identified by the typical purchaser with the manufacturer." *Neles-Jamesbury*, 974 F. Supp. at 970 (citing *Brandtjen & Kluge*, 765 F. Supp. at 1567); *see also Metropcs Wireless*, 2009 WL 3075205. Neither the District Court nor Rolex **ever** addressed these factors.

True, *Brandtjen & Kluge* recognized that, as the Supreme Court did in *Champion* as well, there is a point at which "the reconditioning of or repair to a product can be so extensive that it would be a misnomer to call the article by its original name." 765 F. Supp. at 1570 (citing *Champion*, 331 U.S. at 129). But merely using alternative parts is not sufficient. *Id.* (declining to find a likelihood of

confusion on such a basis).  Nor is adding the "bling" of diamonds on the bezel or applying a new finish to the dial sufficient.  *Id.* (declining to find a likelihood of confusion on such a basis as well).  Just as the plaintiff in *Brandtjen & Kluge* argued, Rolex has claimed here "in a pristine sense . . . once a product crosses a certain threshold of modification, the trademark holder can preclude use of its trademark." *Id.*  But that cannot be true when, as here, twenty, thirty, forty year-old and older watches are refurbished or customized, and sold clearly and unequivocally as **used** watches by BeckerTime.

Rolex never actually adduced **evidence** (other than the self-serving testimony of its lay employees) that BeckerTime made changes to the decades' old Rolex watches that were so extensive (as compared to the condition and quality of the decades' old **vintage** watch itself)[7] that "it would be a misnomer to call the article by its original name."  765 F. Supp. at 1570-71 ("It is a reasonable inference from the evidence that typical press purchasers are more knowledgeable and circumspect buyers who know when they acquire an older model rebuilt KLUGE press that it likely has been reconditioned with substitute parts.  BKI certainly did not establish

---

[7] In the *Champion* case, the district court noted there was no proof whether the allegedly inferior qualities of the refurbished spark plugs stemmed from either "wear and tear prior to the discarding of the plug by the original user, or to the process of repair as conducted by the defendants."  *Champion Spark Plug Co. v. Sanders,* 61 F. Supp. 247, 248-49 (E.D.N.Y. 1945).

the converse of this proposition. It is therefore a fair inference that typical purchasers would not likely confuse [defendant's] work with BKI itself."); *Nitro Leisure Prod.*, 341 F.3d at 1362 ("For used or refurbished goods, customers have a different expectation. They do not expect the product to be in the same condition as a new product. There is an understanding on the part of consumers of used or refurbished products that such products will be degraded or will show signs of wear and tear and will not measure up to or perform at the same level as if new." (citing *Champion*, 331 U.S. at 129)); *Hamilton Int'l Ltd. v. Vortic LLC*, 414 F. Supp. 3d 612, 619 (S.D.N.Y. 2019), *reconsideration denied*, 2020 WL 122908 (S.D.N.Y. Jan. 10, 2020) ("[T]he fact that the movements **may not have been restored to precise factory specifications** or **were restored with parts from other vintage Hamilton watches does not make the ads deceptive and infringing as a matter of law**. Just as the sparkplug consumers in *Champion* would expect lower quality from secondhand sparkplugs, a reasonable factfinder could determine that consumers of restored, historic watches would expect these techniques as well." (emphasis added)).[8]

---

[8] Rolex and the District Court relied heavily on the fact that BeckerTime's refurbishment of some of the decades' old Rolex watches involved the removal of Rolex's marks from the genuine dial, repainting and refinishing the surface of the genuine dial, and then a reapplication of the Rolex marks (and other wording that are not Rolex's marks). Yet, even the *Champion* case involved a fact-pattern where the "spark plugs were repainted" and "the reconditioning also involved removing

At bottom, BeckerTime's watches, clearly described as refurbished or customized decades' old Rolex watches, were just that: a used, customized Rolex watch. That's not a misnomer. BeckerTime's customers would expect (and indeed, were told about) the nature of the changes and refurbishing work done to every used Rolex watch BeckerTime sold.

1. **BeckerTime's Disclosures Were Clear and Fully Apprised Purchasers of the Changes and Repairs Made to the Vintage Rolex Watches**

There is no question that BeckerTime "plainly advised the purchaser[s]" that the watches were refurbished, or modified, or refinished, or repaired with aftermarket, non-oem parts. *Cf. Brandtjen & Kluge*, 765 F. Supp. at 1572; *see supra* at 4-6. The evidence below actually demonstrated that BeckerTime fully disclosed the nature of its work and the parts that were replaced on any watch, and that those refurbished watches sold "for a whole lot less than a new" Rolex watch. *E.g.*, *Brandtjen & Kluge*, 765 F. Supp. at 1572. And, those who purchase used goods for a significant price discount generally recognize the product will not perform as it did when new." *Id.* (citing *Champion*, 331 U.S. at 129).

---

burned and pitted portions of the center electrodes, welding new metal to the side electrodes, wearing away the plug's porcelain insulators through sandblasting, and then cleaning and painting the spark plug." *Nitro Leisure Prod.*, 341 F.3d at 1364 (citing *Champion*, 156 F.2d at 489).

Rolex in fact adduced no evidence that "any purchaser of a [vintage Rolex watch from Beckertime" who read the disclosures "believed he [or she] bought anything other than" **a refurbished or customized Rolex**. *Brandtjen & Kluge*, 765 F. Supp. at 1572. Neither the District Court nor Rolex ever addressed these propositions in the *Champion* framework.[9]

> ### 2. There was No Evidence That the Usual Purchaser Would Associate Rolex With Any Inferior Qualities of BeckerTime's Watches

The District Court was further misled by Rolex's arguments below suggesting that where BeckerTime adds diamonds to a bezel or refinishes a dial, the watch is no longer a "Rolex" watch. But this exact argument was flatly rejected in *Brandtjen & Kluge*, which noted that the critical inquiry under this factor is "whether the typical purchaser would attribute to [Rolex] any dissatisfaction with [any alleged] inferior qualities of the product," and not simply whether such changes were made. 765 F. Supp. at 1572; *see also Nitro Leisure Prod.*, 341 F.3d at 1364 (stating "inferiority is immaterial as long as the original manufacturer 'is not identified with the inferior qualities of the product resulting from wear and tear or the reconditioning'" (quoting *Champion*, 331 U.S. at 130)).

---

[9] In the incorrect context, the District Court did find that the "product descriptions on BeckerTime's website and eBay listings indicate that the replacement parts are not genuine Rolex parts, that BeckerTime is not affiliated with Rolex" and that "[m]ost customers, at a minimum, read the product descriptions." ROA.2162.

There was **no evidence** that any of BeckerTime's customers were "in any way dissatisfied" **with Rolex** based on the customizations or refinishing performed by BeckerTime; nothing in the record here suggests "a typical purchaser—even if displeased in this regard—**would transfer its feelings to [Rolex]**." *Brandtjen & Kluge*, 765 F. Supp. at 1572; *e.g.*, ROA.3569-3572 (customer clearly not associating defect with Rolex). Indeed, Rolex admitted at trial that no customers ever contacted it about BeckerTime's watches, let alone about any dissatisfaction. ROA.2652ll14-16 (testimony by Rolex admitting there were no complaints by customers to Rolex about BeckerTime's watches); *cf. Vortic*, 13 F.4th at 274 (finding it compelling that defendant "has never been contacted by anyone confused as to Hamilton's affiliation with Vortic's watches, and Hamilton [plaintiff] offered no evidence to the contrary"). Rather, all of the emails admitted at trial show only that BeckerTime's customers were asking for more specifics as to the nature of the refurbishment or customization, or in some isolated instances, were expressing disappointment with ***BeckerTime's*** work, not of actual confusion as the District Court improperly concluded.

*  *  *

At bottom, the District Court did not consider the appropriate analysis of BeckerTime's repair, refurbishment, customization, and sale of used Rolex watches under the *Champion* framework. Its failure to do so compels this Court to conduct

a *de novo* review, and such a review can only reach two fundamental conclusions on appeal here:

(1)  BeckerTime is permitted by law to repair, refurbish, and customize genuine, used (decades' old) Rolex watches so long as it makes full disclosures of the nature of its services and the nature of the parts used in such watches; and

(2)  To the extent this Court believes that BeckerTime's disclosures are inadequate, remand this case to the District Court to consider what further disclosures are necessary to place BeckerTime's activities within the protections of the *Champion* framework that unequivocally holds: **"<u>Full disclosure</u>" by <u>BeckerTime</u> <u>gives</u> <u>Rolex all</u> <u>the protection</u> <u>to which</u> <u>it is entitled</u>**.[10]

## II. If the District Court Correctly Found Infringement, the Injunction it Imposed Comports with the Court's Factual Findings and All Applicable Equitable and Legal Principles

Rolex's appeal first claims that the District Court's permanent injunction is inconsistent with the court's findings at the bench trial. Br. at 14-29. Yet Rolex continues to overlook that at trial, **it <u>bore</u>** the burden of proving the purported inadequacy of BeckerTime's disclosures as to the refurbished and customized

---

[10] To the extent BeckerTime's disclosures were inadequate, the concept of "full disclosures" supposes that the District Court should impose *different* or *more* disclosures that adequately address Rolex's trademark interests in the repair and customization of vintage Rolex watches. *See supra* n.6.

vintage Rolex watches it sold. *Vortic*, 13 F.4th at 274 (approving of notion that defendant does not bear burden "to prove the effectiveness of its disclosures under *Champion*").[11] On this front, Rolex relied entirely on *ipse dixit* at trial, and the District Court's opinion **did not hold that no amount of disclosures** would be sufficient. To the contrary, the District Court found that changes to BeckerTime's disclosures were necessary to alleviate what it perceived as inadequacies in how BeckerTime describes the aftermarket parts and customizations made to the vintage Rolex watches it advertises and sells. *Cf.* ROA.2274-2279.

Likewise, Rolex continues to point to its decades' old cases against other defendants whose conduct was factually and legally different from BeckerTime, and claims the District Court erred by failing to adopt the identical approach to injunctive relief here. Br. at 26-36. But these other cases are, at most, informative as to the marked differences in BeckerTime's conduct and the watches at issue, and the District Court's permanent injunction properly takes into account the equities and facts of **this** instant case.

---

[11] Rolex ignores this burden and claims it is BeckerTime that must demonstrate the adequacy of the District Court's imposed disclosures under the injunction. *Cf.* Br. at 40-41. To the extent the District Court did not err in failing to apply the *Champion* framework, the injunctive relief is ordered reflects a balancing of the right of a vintage watch owner and the disclosure obligations when modifications to that watch are performed while retaining the manufacturer's marks. *Brandtjen & Kluge*, 765 F. Supp. at 1570.

Rolex's argument also glosses over that this Court reviews the grant of injunctive relief for an abuse of discretion, and that "an equitable remedy for trademark infringement should be **no broader than necessary** to prevent the deception" proven at trial. *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (emphasis added) (quotation omitted); *see also Frostie Co. v. Dr. Pepper Co.*, 361 F.2d 124, 127 (5th Cir. 1966) (Fifth Circuit will "interfere [with scope of inunction in trademark case] only . . . [where] convinced that the trial court's conclusion resulted from an abuse of discretion"). And, Rolex relies on the safe distance rule to argue that the injunction should have been broader, but ignores that this Court has held such an application of the rule is improper where, as here, a defendant did not act in bad faith (and where there is a finding of laches). *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 154-55 (5th Cir. 1985) (refusing to apply safe distance rule because "[t]his case is unlike the *Chevron Chemical* and *Kentucky Fried Chicken* cases, where the defendants' conduct was egregious"); *see also Mahindra & Mahindra, Ltd. v. FCA US, LLC*, 2022 WL 4299770, at *5 (6th Cir. Sept. 19, 2022) ("Courts have found that the safe-distance rule is 'especially' useful 'where the infringement was abusive or in bad faith'" (quotations omitted)).[12]

---

[12] Nor is the safe distance rule justified here as BeckerTime is not a "competitive business" with respect to Rolex. BeckerTime does not sell new or lightly used Rolex watches, and Rolex does not sell used Rolex watches. *See Conan Props.*, 752 F.2d at 154 ("**competitive** business, once convicted of unfair competition in a given

As discussed below, assuming the District Court did not err in failing to address the *Champion* framework, the injunctive relief it imposed was well within its discretion and acknowledged that a specifically-tailored injunction was appropriate based upon the balancing of the equities, including the used goods at issue and the fact that BeckerTime did not act in bad faith or with deliberate intent to infringe. *See infra* at 46.

### A. Rolex Incorrectly Relies Upon Distinguishable Cases Involving Different Conduct and Different Defendants to Manufacture the Appearance of Error in the Injunction

As it did below, Rolex harps on three decades' old cases for the premise that once a watch component is found to be "integral" or infringement is proven, BeckerTime must be treated identically to those prior defendants. Br. at 27-30 (citing and primarily relying upon (i) *Rolex Watch U.S.A. v. Meece*, 158 F.3d 816 (5th Cir. 1998), (ii) *Rolex Watch U.S.A., Inc. v. Michel Co.*, 179 F.3d 704 (9th Cir. 1999), and (iii) *Rolex Watch U.S.A., Inc. v. JBJ Distribs., Inc.*, 2001 U.S. Dist. Lexis 27509 (S.D. Tex. Aug. 20, 2001)). But this case involves *purely* equitable claims for relief, and the equities necessarily demand the very balancing the District Court engaged in to reach the particularized injunction it issued.

---

particular, should thereafter be required to keep a safe distance away from the margin line" (emphasis added) (quotation omitted)); *cf. supra* at 4-6.

First, with respect to the *Meece* case, that defendant "customized" **new** Rolex

watches, adding nongenuine parts, such as diamond bezels to those watches. *Meece*,

158 F.3d at 819. That defendant " recas[ed] genuine old Rolex movements **in non-**

**genuine Rolex cases**" and "substitute[ed] other non-genuine parts" in those watches.

*Id.* (emphasis added). That defendant also **used Rolex trademarks to identify non-**

**genuine parts**. *Id.* And, more fundamentally, that defendant did not want to

disclose any of these facts to the consumer, admitting he "deals with jewelers, not

with the public . . . [and] that he makes it a point to '**hide from the public**' and

'**avoid[] them like the plague**.'" *Id.* (emphasis added). As was clear from the trial

below, BeckerTime does not deal in new or lightly used Rolex watches (all of the

watches it sells are decades' old and they are sold as such)), BeckerTime never re-

cased Rolex movements, BeckerTime never applied a Rolex mark to a non-Rolex

part,[13] and BeckerTime consistently disclosed **all** refurbishments, customizations,

and the auspices of all parts in the watches it sold.

So too is true with the *Michel* case. That defendant employed imitation (fake)

Rolex crown logos on non-Rolex parts, sold watches bearing Rolex trademarks that

had no Rolex parts (*i.e.*, a prototypical counterfeit), sold non-Rolex watch bands

---

[13] Indeed, this is even true with respect to the few instances where BeckerTime placed a genuine Rolex clasp on an aftermarket, non-Rolex watch band. All such watch bands were described as aftermarket, and the clasp was in fact a genuine Rolex clasp. ROA.3661.

bearing Rolex marks, did not disclose the use of non-genuine parts on other watches, and avoided engaging with the consuming public by selling to wholesale dealers. *Michel*, 179 F.3d at 706-08 & n.4.

Finally, *JBJ* is equally distinguishable, as that defendant performed "gold" conversions on Rolex watches, re-cased Rolex movements into non-Rolex cases, misrepresented its conduct to the Court, withheld documents to conceal its conduct, and engaged in bad faith litigation and discovery conduct, including destroying evidence. 2001 U.S. Dist. Lexis 27509.

Whatever the value of these cases, none of them address the vintage Rolex watches at issue here, none of them involve the dearth of evidence that Rolex presented at trial where it relied entirely on its own employee testimony (not a single expert, not a single survey, not a single non-Rolex witness as to the purported "confusion" or the inadequacy of the disclosures), and none of these prior cases involve BeckerTime as a defendant. For that reason, Rolex's resort to these cases actually underscores that its arguments as to the inadequacy of the injunction here do not arise from any deficiencies in factual findings in this case, but rather its belief that these cases stand for the unique proposition that no Rolex watch can ever be altered in any way shape or form without its approval, irrespective of how old that watch is and irrespective of the disclosures that accompany such a watch. That simply cannot be true. *Champion*, 331 U.S. at 128-29.

## B. The District Court Correctly Imposed a Specifically-Tailored Injunction Permitting the Sale of Aftermarket Bezels

Relying on these inapposite cases, Rolex next claims that because a "bezel on a Rolex is a[n] . . . integral part" and "serves a waterproofing function,"[14] it was purportedly legal error for the District Court to exclude non-genuine bezels (including customized bezels containing diamonds or other gemstones) from Sections 1(a) and 1(b) of the permanent injunction. Br. at 30.

But Rolex ignores that Section 1(a) primarily dealt with the advertising and sale of customized Rolex watches where the dial had been refinished or where – though not at issue with BeckerTime – any non-genuine components display a Rolex mark. *See* ROA.2274-2275. Section 1(a) permits BeckerTime to customize vintage Rolex watch dials by adding stones or other embellishments, subject to the requirement that all such changes are fully disclosed and a permanent inscription on the watch is made indicating it was "CUSTOMIZED BY BECKERTIME." *Id.*

Rolex also ignores that Section 1(b) permits a limited exception to 1(a)'s prohibitions by allowing BeckerTime to refurbish and customize watches at the "specific request of an individual watch owner." *Id.* It is well-accepted that a watch

---

[14] There was no evidence presented at trial as to how a 20, 30, 40, or even 60-year-old, vintage Rolex watch would perform with respect to waterproofing. *Supra* at 7. It is axiomatic that watches, by virtue of use and the passage of time, may no longer be waterproof. Its references to this premise is and has always been a red herring.

owner cannot be restrained from customizing his or her own watch, whether that includes non-Rolex aftermarket parts or other customizations. *E.g.*, *Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 856 (9th Cir. 2002) ("[I]f the owner chooses to buy aftermarket spare parts and does the repairs himself, there is no sale of a trademarked good in commerce, and hence no trademark infringement."); *Cartier v. Symbolix, Inc.*, 454 F. Supp. 2d 175, 185 (S.D.N.Y. 2006) (concluding that the overall transaction, in which defendants added diamonds and polished a stainless steel Tank Francaise watch **at the request of a customer who had previously purchased the watch**, did not constitute "use in commerce" within the meaning of the Lanham Act).[15]

Section 1(c), on the other hand, deals with the sale of **parts** for Rolex watches. It permits the sale of non-Rolex aftermarket parts by BeckerTime that do not display any Rolex marks, including among other things, aftermarket bezels that have been customized with gemstones or other features. ROA.2277-2278. It permits BeckerTime to only us the "Rolex" term nominatively "as a reference to describe

---

[15] Indeed, even the *Michel* court expressly stated that "**neither the district court's injunction**, **nor the injunction we direct it to enter**, enjoins [defendant] **from altering Rolex watches at the specific request of an individual watch owner**". 179 F.3d at 710 (emphasis added). There is nothing vague or impermissible in the District Court's injunction recognizing the rights of and the trademark exception for owners of Rolex watches to have those watches modified as they please. *Cf.* Br. at 45-47.

which models an aftermarket part is compatible with, and for any other uses permissible by the nominative fair use doctrine." *Id.* Rolex apparently seeks to prevent classic fair use, arguing that only parts manufactured by it can be installed by the owner of a vintage Rolex watch and that non-Rolex parts that bear no Rolex marks and are simply compatible with the watches cannot be marketed as such. The District Court correctly ignored such a request as an impermissible restriction under the Lanham Act.

### C. The District Court Correctly Imposed a Specifically-Tailored Injunction Permitting Customized Dials Under Limited Circumstances

Contrary to Rolex's next claim, the District Court did not permit BeckerTime to sell "counterfeit" watches with "non-genuine dials." Br. at 32, 37-38. Rather, the District Court permitted BeckerTime to refurbish genuine Rolex dials on the vintage watches so long as (i) the Rolex marks are not removed and reapplied, **and** (ii) if any embellishments such as gemstones are added, that watch be permanently inscribed with "CUSTOMIZED BY BECKERTIME," **and** (iii) all such modifications be fully disclosed and the watch can no longer be described as a "GENUINE ROLEX." ROA.2274-2278. As before, Rolex's entire theory for why this is purportedly improper is a resort to the decades' old cases involving different conduct by different defendants. This case is about BeckerTime and what it is prohibited from doing with respect to the vintage watches at issue.

Rolex suggests that the District Court's conclusion that "customers with no prior knowledge about watches can distinguish original from custom dials" is unsupported by the evidence. Br. at 36. However, it is Rolex that failed to present a single shred of evidence that consumer confusion existed in support of **its** burden in the first instance. Rolex's bare assertions on this point, at this late stage, should not be entertained.

### D. The District Court Did Not Authorize BeckerTime to Create and Sell Counterfeit Watches

Finally, Rolex reverts to its self-serving definition of a "counterfeit" watch throughout. *Supra* at 4. This is a thinly-veiled attempt to suggest the District Court abused its discretion in excepting from the injunction a limited subset of customized watches by BeckerTime so long as they have an inscription applied and are sold with full disclosures. Br. at 39 (citing same decades' old distinguishable cases). The District Court's tailored injunction, however, does not permit sales of counterfeit watches (as the law recognizes that term) and properly addresses the specific factual context of this case.

Significantly, this case involves authentic Rolex watches that are decades' old and have long-left the Rolex manufacturing facility, any Rolex warranty or service arrangement has long-expired, and all have genuine Rolex movements and genuine Rolex cases. Now the question is whether these watches be customized (in a limited manner, as discussed above and provided for by the injunction) by BeckerTime, or

whether Rolex is permitted to control the used Rolex watch market from the cradle to the watch's grave? The District Court was implicitly convinced that Rolex did not meet ***its*** burden to show confusion extended to such vintage watches.

Additionally, there was no evidence presented by Rolex of any post-sale confusion at trial. Not a single survey and not a single email about a BeckerTime watch to Rolex, and not a shred of any "evidence" other than Rolex's *ipse dixit*. It cannot now complain that "full disclosures" by BeckerTime, including a permanent inscription, will somehow mislead or confuse downstream purchasers as to customized, vintage Rolex watches, nor does Rolex even support its proposition that *it* will be associated with such customizations. Br. at 41-42. Indeed, Rolex suggests that "a Rolex-branded watch inscribed with "CUSTOMIZED BY BECKERTIME" might suggest some sort of "authorized collaboration between Rolex and BeckerTime," but offered nothing to show this would be true with respect to the **vintage**, **decades' old** watches at issue here.[16] *Id.* It offered no survey evidence of what a consumer of such a vintage watch expects, understands, or attributes to Rolex at trial.

---

[16] This argument is akin to Chevy or Ford suggesting that resto-mods cannot be created and sold because some buyer down the line would actually believe that a 50+ year-old restored and customized muscle car with a modern engine or fresh metallic paint scheme is somehow a "collaboration" with it as a manufacturer.

**III. The District Court Correctly Applied Principles of Equity to Bar Monetary Recovery by Rolex, and Rolex Has Waived Any Arguments Concerning Trebling or Attorneys' Fees under the Lanham Act by Failing to Move for Such Relief Below**

Rolex next strings together the false premise that BeckerTime engaged in "deliberate counterfeiting" and that it "deliberately advertise[d] and [sold] counterfeit 'Altered Watches,'" Br. at 47, but the District Court never used such phrases in any of its factual findings in the Opinion below. *Cf.* ROA.2157-2172. Rather, the District Court **expressly** **found** **the** **opposite**: there was "insufficient evidence to show [BeckerTime] had unclean hands" and that "Rolex failed to show subjective and knowing bad faith necessary to foreclose [BeckerTime's] equitable defenses." ROA.2170.

Moreover, Rolex's brief here conveniently omits the fact that because it **only** pursued equitable relief at trial – it specifically waived any legal claims as a method of avoiding a jury trial (ROA.1108-1109) – the District Court's "factual findings that underlie the decision to grant or deny relief are reviewed only for **clear error**" and the "ultimate exercise of a court's equitable power is reviewed for abuse of discretion." *Bogan v. MTD Consumer Grp., Inc.*, 919 F.3d 332, 335-36 (5th Cir. 2019) (citations omitted); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997) (same with respect to equitable relief under Lanham Act); *see Vortic*, 13 F.4th at 271 (appellate court "is not allowed to second-guess the court's credibility assessments,' and '[w]here there are two permissible views of the evidence, the

factfinder's choice between them cannot be clearly erroneous"); *Luhr Bros. v. Crystal Shipowning, PTE Ltd.*, 325 F.3d 681, 687 (5th Cir. 2003) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

Rolex also ignores that disgorgement is purely "an equitable remedy and is to be awarded 'with the principles of equity.'" *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1495-97 (2020). This Court has identified the following factors in determining whether disgorgement is appropriate: (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001). Indeed, "'[i]n fashioning the appropriate remedy, a legal determination of liability is not dispositive,' and in determining whether disgorgement is appropriate a court must further consider the 'adverse effects, if any, on the plaintiff.'" *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 877 (5th Cir. 2019) (quotation omitted).

Additionally, as the District Court found here, the adequacy of injunctive relief justified rejecting any disgorgement. *Pebble Beach*, 155 F.3d at 555

("Considering the lack of actual damages and the lack of an intent to confuse or deceive, injunctive relief satisfies the equities in this case."). Likewise, as here, "the lack of any evidence of lost or diverted sales" is a "significant factor[]" that precludes disgorgement. *Id.*; *Seatrax, Inc. v. Sonbeck Intern., Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (noting that disgorgement was unjustified in light of a lack of willful infringement, lack of palming off, sufficiency of injunctive relief as a deterrent, and lack of "sufficient proof of actual damages"); *Sw. Recreational Indus., Inc. v. FieldTurf, Inc.*, 2002 WL 32783971, at *9 (5th Cir. Aug. 13, 2002) (noting the absence of diversion and palming off in affirming a denial of disgorgement); *Retractable Techs.*, 919 F.3d at 882; *Neutron Depot, LLC v. Bankrate, Inc.*, 2018 WL 3014435, at *3 (W.D. Tex. May 1, 2018), *aff'd*, 798 F. App'x 803 (5th Cir. 2020) ("Courts in the Fifth Circuit rarely award profits if there is insufficient proof of actual damages or where the defendant lacked intent to confuse or deceive."). Finally, a finding of laches, as here, "may defeat claims for injunctive relief as well as claims for an accounting." *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1161 n. 14 (5th Cir. 1982).

## A. The District Court Correctly Determined There Is Insufficient Evidence of Deliberate Counterfeiting by BeckerTime

As an initial matter, Rolex intentionally conflates the premise of a finding of counterfeiting under 15 U.S.C § 1114(1), *see* ROA.32-33 (complaint identifying bases for counterfeiting claim), which may automatically arise from a finding of

infringement,[17] as here, with the available **penalties** for **intentional** counterfeiting permitted under 15 U.S.C. § 1117(b).  *See* Br. at 47-57.  Rolex continues to blur the lines between a run-of-the-mill infringement case and one involving bad faith or wrongful intent by a defendant sufficient to both trigger the potential for enhanced damages as well as preclude a laches defense.

Here, the District Court did not clearly err in finding that BeckerTime did not act with bad faith or wrongful intent.  In particular, with respect to Rolex's counterfeiting claim, the trial evidence demonstrated that every watch that BeckerTime sells and services is not a "knockoff" of a Rolex, but rather every one was advertised and sold as a repaired, refurbished or customized **vintage** Rolex watch with a Rolex case and a Rolex movement.  *Supra* at 4-6.  Further, the evidence at summary judgment and at trial was unequivocal that BeckerTime goes to great

---

[17] Most cases recognize that the elements for both infringement and run-of-the-mill counterfeiting are the same. *Louis Vuitton Malletier S.A.S. v. Sandra Ling Designs, Inc.*, 2021 WL 3742024, at *2 (S.D. Tex. Aug. 24, 2021) ("To establish a claim of trademark counterfeiting or infringement under the Lanham Act, a plaintiff must plead (1) that it possesses a legally protectable trademark and (2) that the defendants' use of the trademark creates a likelihood of confusion as to source, affiliation, or sponsorship." (citing *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010)); *Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1079 (9th Cir. 2020) ("[T]here is nothing in the statutory language of Section 1114 that suggests that a counterfeit claim should be construed differently from an infringement claim" (quotation omitted)).

lengths to provide full disclosures to the purchasing public. *Supra* at 4-6.[18] In fact, Rolex's "lynchpin" emails from BeckerTime's prospective and actual customers being disappointed or inquiring as to the auspices of particular watches or parts actually demonstrate that BeckerTime is always fully forthcoming and honest as to the repairs and customizations performed on the watches it was selling. *Id.*

Rolex continues to ignore these unassailable facts and claims that because BeckerTime benefited from Rolex's reputation and goodwill, that a conclusion as to BeckerTime's **<u>wrongful</u> <u>intent</u>** to infringe logically follows. *Cf.* Br. at 47, 49-50. But, as the District Court correctly found, BeckerTime is a reseller of used or refurbished Rolex watches, and is permitted to benefit from Rolex's mark, and such a benefit in and of itself is not evidence of a bad faith or intentionality. ROA.2170; *e.g.*, *Champion*, 331 U.S. at 130 (second-hand dealer is permitted advantage from the trademark); *Nitro Leisure Prod.*, 341 F.3d at 1363 (second-hand dealer must be allowed to get some advantage from the trademark); *Vortic LLC*, 486 F. Supp. 3d at 662 (recognizing same with respect to a "modified" genuine product).

Rolex's tautological argument as to intent continues by reference to BeckerTime's former phrasing on its website as to its certified watchmaker being a

---

[18] Despite the opportunity on numerous occasions, Rolex did not present a single survey, any expert evidence, or any lay testimony from any non-Rolex employee as to the purported inadequacy of Beckertime's disclosures. It relied entirely on *ipse dixit* below.

"Rolex certified master watchmaker," *see* Br. at 51, but ignores that such phrasing was not intentional, was removed immediately after this litigation was filed (and long before trial), *supra* n.6, and the testimony at trial that demonstrated BeckerTime's watchmaker was indeed a **certified** horologist. ROA.2920ll.19–2924ll.21 (no dispute that Mr. Comitini is a certified horologist, an expert watchmaker, and has multiple industry certifications).

Rolex then turns to the fact that a small number of refinished dials containing the reapplied DATE JUST mark were placed into the cases of DATE watches by BeckerTime as somehow evidence of bad faith, Br. at 48, but neither the reapplication of marks, nor the use of **fully-disclosed** refinished dials in over 40-year-old watches that were otherwise genuine Rolex watches, constitutes the requisite intentionality based on the evidence adduced at trial. *Nitro Leisure Prod.*, 341 F.3d at 1364 n.1 (noting that the refurbisher in *Champion* "at the very least, applied or reapplied Champion's trademark to its cartons and packaging" and that such conduct is permissible under Supreme Court precedent for refurbished goods and that such conduct was permitted by the Supreme Court (citing *Champion*, 331 U.S. at 126)); *cf.* Br. at 50. Likewise, Rolex's resort to the "Superlative Chronometer Officially Certified" phrase – which is not a Rolex mark and appeared on the watches when *new* – is not availing as there was no evidence at trial as to the functionality of a decades' old watch – whether an unmodified used Rolex or one refurbished or

customized by BeckerTime – and whether it would or would not meet those standards. Simply reapplying these phrases as they appeared on the used watch before refurbishment is not evidence of any malintent by BeckerTime. *Cf.* Br at 48.

Rolex also attempts to equate Mr. Becker' articles and blog posts about how ***Rolex*** disapproves of using aftermarket parts with the premise that BeckerTime allegedly engaged in knowing infringement. Br. at 48 n.12. But proceeding to do business while knowing that **Rolex** does not approve of the conduct is not tantamount to bad faith or wrongful intent to confuse customers. Counsel's word games by calling the vintage watches at issue "counterfeits" or "Altered Watches" because non-Rolex parts were used by BeckerTime does not prove wrongful intent or bad faith.

Likewise, Rolex relies on Mr. Becker's lay person's awareness and view of how *different* defendants from other cases – defendants engaged in completely *different* conduct – were held to be intentional counterfeiters as somehow showing he acted with intent. *Abraham*, 708 F.3d at 621 ("This court has recognized that a defendant's mere awareness of a plaintiff's claim to the same mark neither amounts to passing off nor establishes the bad intent necessary to preclude the availability of the laches defense. The plaintiff's burden, therefore, is heavy . . . [t]o foreclose the laches . . . defense[]." (quoting *Conan Props.*, 752 F.2d at 150)); *Alarm.com, Inc. v. Securenet Techs. LLC*, 345 F. Supp. 3d 544, 553-54 (D. Del. 2018) (evidence that a

lay person was aware of similar litigation does not prove that he is a willful or deliberate infringer); *Idaho Golf Partners, Inc. v. Timberstone Mgmt., LLC*, 2017 WL 3531481, at *11 (D. Idaho Aug. 17, 2017) ("mere knowledge of a competing trademark claim will not suffice to establish 'willful infringement'"). The District Court did not clearly err in discounting Rolex's self-serving jargon and to distinguishable cases.

And, Rolex's reliance on the District Court's conclusion that BeckerTime's "disclosures did not fully alleviate confusion" is not evidence of bad faith or wrongful intent. Br. at 48-50. Indeed, the evidence at trial, both in Mr. Becker's testimony as well as in the email communications with prospective and actual customers, showed that at every instance BeckerTime attempted to clarify and alleviate any confusion and made honest statements as to the refurbishment and customizations made to the watches being sold and offered for sale. *Supra* at 4-6.

Finally, Rolex's desperate attempt to conflate a finding of counterfeiting with the finding of **deliberate** or **intentional** (bad faith) conduct is no more apparent than by its reference to pre-stamped signatures on the BeckerTime "Certificate of Authenticity," one of a number of documents provided by BeckerTime to its customers after a transaction. *Cf.* Br. at 51 & n.13; ROA.3005ll.6-3006ll.6, 3701-

3736.[19] Not only is Matt Becker entirely identified with his (and his father's) eponymous watch reselling business – BeckerTime (including all contact information such as telephone, email, and address) – throughout the paperwork that a customer receives, there was simply no evidence that Mr. Becker or BeckerTime attempted to hide from dissatisfied customers or cloak themselves in anonymity in any way. Rolex's reliance on the purported legibility or illegibility of a **stamped** artistic signature is nonsensical, and does not move the needle in demonstrating clear error in any of the District Court's factual conclusions as to BeckerTime's scienter. *Cf.* ROA.3143ll.2-6 ("THE COURT: The question is, is it signed in a way to disguise your signature? THE WITNESS: No, it's not. And is that a way to disguise my signature? No. I put my name everywhere. I'm signing my name everywhere.").

For these reasons, Rolex's reliance on *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008), for the premise that the District Court allegedly abused its discretion in finding that laches applied in this case to limit Rolex's remedies, is unavailing. *See* Br. at 49. Unlike in *Bd. Of Supervisors*, the District Court concluded there was insufficient evidence of wrongful intent or bad faith by BeckerTime. *Cf.* 550 F.3d at 490 (noting

---

[19] As noted in the trial testimony, customers in the same transaction also receive a "Trade-Up Certificate" that contains a stamped, but allegedly more legible, signature by Matthew Becker. ROA.3705-3706; 3138ll.24–3140ll.5.

the "**substantive** and __**bad faith**__" necessary to foreclose an equitable defense" (emphasis added)).  Indeed, courts have recognized, as the District Court impliedly did here, that equitable defenses such as laches may still apply even where a defendant is found to have engaged in counterfeiting under 15 U.S.C. § 1114.  *E.g.*, *Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec. Supply Inc.*, 106 F.3d 894, 899-903 (9th Cir. 1997) (analyzing counterfeiting and intent separately).[20]  It is a separate question whether BeckerTime engaged in __intentional__ or __deliberate__ counterfeiting – it did not – and a question on which the District Court's factual findings are not clearly erroneous.

### B.   The District Court Properly Found Sufficient Evidence that BeckerTime Was Unduly Prejudiced From Rolex's Delay

Rolex argues that BeckerTime failed to meet its evidentiary burden to show the "undue prejudice prong of the laches defense."[21]  Br. at 52-53.  It claims that undue prejudice can only be found if BeckerTime "'ma[de] major business investments'" in reliance on Rolex's delay.  *Id.* (quoting *Pennzoil-Quaker State Co.*

---

[20] The *Westinghouse* case is instructive.  Not only did that jury find, as the District Court here, the defendant reburbishers' reapplication of copies of Westinghouse marks may have constituted "counterfeiting" under 15 U.S.C. § 1114, the appellate court recognized the district court did not err in finding the non-intentional infringement by those defendants justified granting __no injunctive__ __relief__ __or__ __damages__ to Westinghouse.  106 F.3d at 903.

[21] Rolex fails to acknowledge that the District Court's factual conclusions are reviewed for clear error.  *Supra* at 46.

*v. Miller Oil & Gas Ops.*, 779 F.3d 290, 299 (5th Cir. 2015)).  Apart from the fact

that *Pennzoil* involved a discussion of prejudice in the context of acquiescence (not

laches), this Court has repeatedly recognized that undue prejudice

> encompasses **actions taken by the defendant that it would not have
> taken** or consequences it would not have suffered **had the plaintiff
> brought suit promptly**. . . .  Laches is a good defense if plaintiff's long
> failure to exercise its legal rights **has caused defendant to rely to its
> detriment by building up a valuable business** . . . .

*Abraham*, 708 F.3d at 624 (emphasis added) (quoting 6 MCCARTHY ON

TRADEMARKS & UNFAIR COMPETITION § 31:12 (4th ed. 2001)).  Thus, the test can

best be summarized as whether BeckerTime would have invested capital – human

and monetary – in establishing and growing his customized used Rolex watch

business had Rolex brought suit promptly.  *Id.* at 625 (affirming finding of undue

prejudice where defendant would not have invested in its course of business but for

the plaintiff's delay in raising the claim).  Rolex cannot meet its burden to show the

District Court clearly erred in finding that BeckerTime suffered undue prejudice

from Rolex's over a decades' delay in bringing its infringement claims.

At trial, Mr. Becker testified unequivocally that in the decade prior to this

lawsuit, he invested in inventory for used Rolex watches, in inventory of refinished

Rolex dials, in aftermarket parts and accessories for Rolex watches, and that such

investments not only were as a result of BeckerTime's shift in business from offering

a wide variety of used watch and gemstone goods, but to specifically offer

customized, used Rolex watches.  ROA.3024ll.25-3026ll.17.  Likewise, Mr. Becker testified that investment increased steadily from 2006 through the ensuing 15 years to focus on offering "vintage Rolex watches" and to specifically meet an increased demand by "buyers that are looking for a customized Rolex watch."  *Id.*

BeckerTime also shifted its advertising and marketing during this time to build BeckerTime's business into a premiere used Rolex **and** customized used Rolex purveyor, including offering a lifetime trade-up option for all of its customers.  ROA.3026ll.21-3028ll.1.   No doubt this was an expensive proposition.   The evidence showed that BeckerTime's focus on and growth of its customized used Rolex watches resulted in it eventually leasing office space in 2013 (previously the business was running out of Mr. Becker's residence), and adding multiple employees.   ROA.3028ll.2-3029ll.5, 3095ll.16-3096ll.4.   Fundamentally, Rolex's own arguments demonstrate that **more** **than** **half** of BeckerTime's sales revenues arise from selling modified, used Rolex watches – a focus in revenue that would not have been made by BeckerTime but for Rolex's delay in bringing suit.  Br. at 8 (Rolex argues "61% of [BeckerTime's] business consists of selling 'Altered Watches'").[22]

---

[22] Rolex also ignores its own delay in bringing suit prejudices BeckerTime's ability to muster any additional evidence Rolex supposedly believes should have been submitted at trial. *E.E.O.C. v. Premier Operator Servs., Inc.*, 75 F. Supp. 2d 550,

The District Court, in fact, found ample evidence that since at least 2010 (if not earlier), Rolex should have been on notice of its claims as to BeckerTime's modified used Rolex watches. *Supra* at 8-10; ROA.3286, 3022ll.3-3024ll.2 (testimony regarding 2009 email from employee at "Rolex Watch, U.S.A." to BeckerTime inquiring as to serial and model number of watch and customizations made to a watch available for sale, and who was informed that the watch had aftermarket diamonds added). Indeed, Rolex's counsel has been responsible for Rolex's trademark enforcement "since 2006" and the District Court found the evidence at trial demonstrated that Rolex has been on notice of BeckerTime's customization of used Rolex watches since 2010, but "no later than 2013 when Silvey [Rolex's counsel's paralegal]" was put on unequivocal notice. *Supra* at 8-10; ROA.2169.

Rolex completely glosses over the District Court's factual conclusion consonant with this Circuit law: the evidence demonstrated "BeckerTime likely would not have shifted its business model to be reliant on the sale of altered Rolex watches if Rolex had brought this suit promptly." ROA.2170; *Abraham*, 708 F.3d at 624-25; 6 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 31:12. Thus,

---

562 (N.D. Tex. 1999) (delay causes witnesses to become unavailable, records to be lost, and personnel to change during the delay period).

Rolex fails to demonstrate any clear error on the undue prejudice prong of BeckerTime's laches defense.

### C. The District Court Did Not Abuse Its Discretion in Refusing to Treble Any Equitable Disgorgement to Rolex and Rolex Waived Any Right to Attorneys' Fees

As an initial matter, to avoid a jury trial, Rolex **stipulated** to the District Court that it "has limited its claims for monetary relief **at trial to the disgorgement of Defendants' profits** . . . [and] for injunctive relief." ROA.1108 (Stipulation to Withdraw Jury Demand, filed July 14, 2021) (emphasis added)). Rolex further stipulated that "because [it] seeks **only equitable relief at trial**," none of the claims required a jury determination. ROA.1109. And, it is axiomatic that "'**damages' are to be treated separately from** 'profits' [under the Lanham Act]. **As for damages**, the court may award up to three times actual damages, depending on the circumstances of the case. **As for profits, however, the court is not authorized to award up to three times the amount proved**." *Georgia-Pac. Consumer Prod. LP v. von Drehle Corp.*, 781 F.3d 710, 718 (4th Cir. 2015) (emphasis added) (citing cases). Not only did Rolex stipulate that it was only seeking an **equitable** disgorgement of profits, it repeated at trial that it was not seeking to punish BeckerTime. *See, e.g.*, ROA.2488ll.4-5 ("Rolex is asking the Court to require the defendants to disgorge their profits on the sales of the altered watches."); *id.* at 2491 ll. 23-24 ("In [co]nclusion, Your Honor, we want to make it clear that Rolex is not

trying to shut down BeckerTime."). Rolex's passing reference to trebling of damages and attorneys' fees in its proposed findings of fact and conclusions of law without a requisite motion (particularly **_after_** expressly stipulating to only equitable disgorgement to avoid a jury trial) is insufficient to overcome the fact that Rolex is judicially-estopped from now raising such a new **_statutory-based_** claim for trebling that is punitive in nature.[23] *See*, *e.g.*, *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (judicial estoppel applies where "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently").

Likewise, on appeal here, Rolex relies on its pro forma request for attorneys' fees from its Complaint and trial brief, but Rolex **never** **moved** for such relief in the District Court below. Fed. R. Civ. P. "54(d)(2)(A) requires that claims for attorneys'

---

[23] Unlike disgorgement of profits, which exists as both a statutory and equitable basis for relief, there is no equitable premise for trebling of damages based upon a scienter requirement such as that under 15 U.S.C. § 1117(b), which requires a determination by the factfinder that the conduct of defendant was **intentional**. *E.g.*, *Gucci Am., Inc. v. Accents*, 994 F. Supp. 538, 540 (S.D.N.Y. 1998) ("threshold determinations of wilfull deceptiveness and intentional counterfeiting . . . are for the jury" and "the trebling of plaintiffs' entire recovery upon proof of defendants' wrongful intent, under § 1117(b), largely serve retributive and deterrent purposes. That is why their award is dependent on findings of, respectively, wilfull deceptiveness and intentional counterfeiting, quasi-criminal states of mind the determination of which has historically been the particular province of the jury").

fees must be made by separate motion to the district court." *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 765-66 (5th Cir. 1996). A review of the docket reveals no motion for attorneys' fees by Rolex after entry of judgment. Because Rolex "did not move for fees below, and the district court has therefore not ruled on the issue, it is not properly presented for [the Fifth Circuit's] review." *Zimmerman v. City of Austin, Texas*, 881 F.3d 378, 395-96 (5th Cir. 2018). Such a "failure . . . serves as a waiver of its claim for attorneys' fees." *United Indus.*, 91 F.3d at 766; *Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) (same).

Yet, even if this Court were to ignore the well-established principles of estoppel that should bar any trebling of damages and Rolex's waiver of its request for fees, which it shouldn't, the District Court committed no clear error in concluding that based on the facts adduced at trial, Rolex had failed to meet its burden to show that BeckerTime acted with the requisite intentionality for such punitive relief to even be appropriate. *See supra* at 8, 46. Nor did the District Court abuse its discretion in finding that no disgorgement of profits (let alone trebling) was appropriate under the facts of this case. It is axiomatic in this Circuit that absent a finding of such willful or intentional conduct, attorneys' fees would not usually be appropriate under the Lanham Act. *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992) ("courts . . . require a showing of a high degree of culpability on the part of the infringer, for example, bad faith or fraud" for

case to be "exceptional" under Section 1117(a)); *Seatrax*, 200 F.3d at 373 ("[T]he exceptional case is one in which the defendant's trademark infringement can be characterized as malicious, fraudulent, deliberate, or willful").

## CONCLUSION

For the foregoing reasons, this Court should find the District Court clearly erred in failing to properly recognize and apply the *Champion* framework for analyzing whether BeckerTime's repair, refurbishment and customization of decades' old Rolex watches retaining Rolex's marks constituted trademark infringement and counterfeiting under 15 U.S.C. § 1114, and unfair competition under § 1125, vacate the District Court's Mem. Op. & Order and Final Judgment, and remand to the District Court for the proper application of the *Champion* principles.

To the extent this Court finds no error in the District Court's findings of infringement and counterfeiting by BeckerTime, it should affirm the District Court's entry of the permanent injunction, affirm that the court did not clearly err by finding BeckerTime did not engage in deliberate infringement, did not abuse its discretion in finding that laches barred Rolex's request for equitable disgorgement, and affirm that neither trebling nor attorneys' fees should have been awarded under the procedural posture of this case.

Respectfully submitted,

*/s/ Michael Beylkin*

MICHAEL BEYLKIN
FOX ROTHSCHILD LLP
1225 17th Street, Suite 2200
Denver, CO 80202
(303) 446-3871 - direct
(303) 292-1300 - fax
mbeylkin@foxrothschild.com

ANDY NIKOLOPOULOS
State Bar No. 24044852
FOX ROTHSCHILD LLP
Saint Ann Court
2501 N. Harwood Street, Suite 1800
Dallas, TX 75201
(214) 231-5776 - direct
(972) 404-0516 - fax
anikolopoulos@foxrothschild.com

*Counsel for Defendants-Appellees/Cross-Appellants BeckerTime LLC and Matthew Becker*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's

ECF filing system on February 22, 2022, on all registered counsel of record, and has

been transmitted to the Clerk of the Court.

*Michael Beylkin*
Michael Beylkin

# CERTIFICATE OF COMPLIANCE

This brief complies with (1) the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(B)(i) and 5TH CIR. R. 28.1 & 32.2 because it contains 15,268 words, excluding exempted text; and (2) the typeface requirements of Rule 32(a)(5) and type-style requirements of Rule 32(a)(6) because it has been prepared in 14-point Times New Roman, a proportionally spaced typeface, using Microsoft Word.

*Michael Beylkin*
Michael Beylkin